[Cite as *Whitehall v. Olander*, 2017-Ohio-2869.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Whitehall, Ohio et al., | : | |
| Plaintiffs-Appellees, | : | No. 15AP-1030 |
| | | (M.C. No. 2007 EVH 60217) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Thomas J. Olander et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on May 18, 2017

**On brief**: *Eastman & Smith Ltd.*, *Joseph R. Durham*, and *René L. Rimelspach*; *Michael T. Bivens*, for appellees City of Whitehall and Franklin County District Board of Health. **Argued**: *Joseph R. Durham*.

**On brief**: *Taft Stettinius & Hollister LLP*, *Joseph C. Pickens*, and *James V. Maniace*, for appellee Receiver Mark S. Froehlich. **Argued**: *Joseph C. Pickens*.

**On brief**: *Law Offices of James P. Connors*, and *James P. Connors*, for appellants. **Argued**: *James P. Connors*.

APPEAL from the Franklin County Municipal Court,
Environmental Division

BROWN, J.

{¶ 1} This is an appeal by defendants-appellants, Thomas J. Olander (individually "Olander"), and Woodcliff Condominium Unit Owners' Association (individually "WCUOA"), from a decision and entry of the Franklin County Municipal Court, Environmental Division, disqualifying attorney James P. Connors ("attorney Connors") from representing WCUOA in an underlying receivership proceeding.

{¶ 2}    In *Whitehall v. Olander,* 10th Dist. No. 14AP-6, 2014-Ohio-4066, ¶ 2, this court previously noted the "extensive history" of litigation in this case, and portions of the following factual background are drawn from our earlier decision.   In July 2007, plaintiffs-appellees, City of Whitehall and the Franklin County District Board of Health (collectively "appellees"), filed suit against Olander and WCUOA (collectively "appellants"). Appellees' complaint alleged that "Olander and WCUOA owned the majority of the units" at the Woodcliff Condominium complex ("Woodcliff"), located in the city of Whitehall, and that "Olander controlled WCUOA."  *Id.* at ¶ 3.  The complaint further alleged that Woodcliff "constituted a public nuisance subject to abatement under R.C. 3767.41 and local ordinances." *Id.*  Appellees requested a court order "permanently enjoining Olander and WCUOA from maintaining the nuisance."  *Id.*

{¶ 3}    The trial court issued an agreed permanent injunction on February 4, 2008. The parties stipulated that Olander and/or WCUOA "owned over 200 of the 317 units at Woodcliff," and "also stipulated that Woodcliff constituted a public nuisance subject to abatement under R.C. 3767.41 and/or local ordinances."  *Id.* at ¶ 4.   Olander "agreed to release * * * control over WCUOA," and the parties agreed to have the trial court appoint a receiver.  *Id.*  In 2008, the trial court initially appointed The Robert Weiler Company as receiver.

{¶ 4}    In an agreed order entered on April 7, 2008, the trial court "outlined some of the receiver's duties with regard to Olander's units and management of WCUOA."  *Id.* After experiencing "difficulties remedying the nuisance," The Robert Weiler Company subsequently filed a motion to withdraw as receiver.  *Id.* at ¶ 5.  In February 2009, the trial court appointed WC Management, LLC ("WCM") as the second receiver.  WCM subsequently "took various steps in an effort to abate the nuisance."  *Id.*

{¶ 5}    In June 2011, the trial court issued an order establishing a plan to "shift control of WCUOA from the receiver to the members of WCUOA and continue abatement of the nuisance conditions."  *Id.* at ¶ 7.  Appellees subsequently asserted that "the receiver and WCUOA had not complied with the trial court's order, and appellees sought demolition of units at Woodcliff."  *Id.*

{¶ 6}    In 2012, WCM requested to withdraw as receiver.  On June 25, 2012, the trial court appointed Mark S. Froehlich (hereafter "receiver Froehlich") as the new

receiver.  In November 2012, the trial court issued an agreed order "staying issuance of a decision on the motion for demolition."  *Id.* at ¶ 8.

{¶ 7}   On August 12, 2013, WCM filed a motion seeking to intervene as a party-defendant, "claiming it owned 119 Woodcliff units and had, by virtue of assignments, a first mortgage interest in other units."  *Id.* at ¶ 11.  The trial court subsequently denied the motion to intervene, and WCM appealed the trial court's denial of its motion.  In *Olander,* this court affirmed the judgment of the trial court denying WCM's motion to intervene.

{¶ 8}   On June 12, 2015, attorney Connors filed a notice of appearance on behalf of Olander.  Also on that date, attorney Connors filed on behalf of Olander a motion for an extension of time to respond to appellees' request to vacate an agreed order and a request to reopen an evidentiary hearing on the motion for demolition.  On July 9, 2015, attorney Connors filed a notice of appearance on behalf of WCUOA.

{¶ 9}   On July 21, 2015, appellees filed a reply to Olander's memorandum contra appellees' request to vacate an agreed order and motion to set an evidentiary hearing.  In the reply, appellees argued that, while Olander "purports to be responding" on behalf of WCUOA, the trial court's entry dated June 25, 2012 "appointed Mark Froehlich as the Receiver for the WCUOA."

{¶ 10} On July 29, 2015, receiver Froehlich filed a motion to strike the appearance of attorney Connors on behalf of WCUOA. In the accompanying memorandum in support, receiver Froehlich asserted he "has not requested nor authorized the retention of Connors as counsel for the WCUOA," and that the "[r]eceiver deems the purported retention of Connors as interfering with his Court-imposed obligations to manage and operate the WCUOA."

{¶ 11} On August 31, 2015, attorney Connors and counsel for receiver Froehlich filed a "stipulation and withdrawal of receiver's motion to strike appearance of James P. Connors on behalf of Woodcliff Condominium Unit Owners['] Association."  The stipulation stated in part: "In the interest of preserving court resources and the funds of the Receivership WCUOA, and to encourage further involvement and cooperation of unit owners in the eventual transition process wherein a new board will be elected upon conclusion of this current receivership, * * * the parties wish to resolve the Motion [to strike the appearance of attorney Connors] without further litigation."

{¶ 12} On September 8, 2015, appellees filed a "response to stipulation and withdrawal of receiver's motion to strike appearance of James P. Connors on behalf of Woodcliff Condominium Unit Owners['] Association." In the response, appellees asserted in part that they were "not contacted by James P. Connors or the Receiver's counsel and did not stipulate to anything." Appellees further argued "there is no WCUOA board, as referenced in the 'Stipulation' suggesting 'a new board will be elected upon conclusion of this current receivership.' " Rather, appellees asserted, "WCUOA is under the control of Receiver Froehlich." Appellees requested that the "Stipulation and Withdrawal of Receiver's Motion to Strike Appearance of James P. Connors on Behalf of Woodcliff Condominium Unit Owners['] Association be withdrawn, stricken, or denied."

{¶ 13} On October 2, 2015, appellants filed a motion to strike appellees' response to the stipulation. Also on that date, receiver Froehlich filed a motion to quash subpoena issued to him by appellants on September 22, 2015. By entry filed October 6, 2015, the trial court granted receiver Froehlich's motion to quash subpoena. On October 8, 2015, receiver Froehlich filed a notice of withdrawal of the prior stipulation regarding the appearance of attorney Connors on behalf of WCUOA.

{¶ 14} On October 9, 2015, the trial court conducted a hearing on a motion to demolish certain condominium units. During that hearing, attorney Connors appeared on behalf of Olander and, additionally, sought to represent the interests of WCUOA. On October 26, 2015, the trial court issued a decision and entry disqualifying attorney Connors from representing WCUOA.

{¶ 15} On appeal, appellants set forth the following three assignments of error for this court's review:

> 1. The trial court erred by *sua sponte* disqualifying counsel for the Woodcliff Condominium Unit Owners' Association.
>
> 2. The trial court erred by *sua sponte* disqualifying counsel for the Woodcliff Condominium Unit Owners' Association without first conducting an evidentiary hearing.
>
> 3. The trial court erred by denying standing to the Woodcliff Condominium Unit Owners' Association to represent and defend itself in a civil lawsuit as a named party defendant, and

by finding that the receiver has exclusive absolute control of the Association and its business.

{¶ 16} Appellants' assignments of error are interrelated and will be considered together. Under these assignments of error, appellants assert the trial court erred in: (1) sua sponte disqualifying attorney Connors from representing WCUOA, (2) sua sponte disqualifying attorney Connors from representing WCUOA without conducting an evidentiary hearing, and (3) denying standing to WCUOA.

{¶ 17} At issue on appeal is the propriety of the trial court's ruling disqualifying attorney Connors from representing the interests of WCUOA in the underlying receivership proceeding. Under Ohio law, "[a] trial court has the duty and responsibility to supervise the conduct of attorneys who appear before it and its rulings will be upheld unless the court abused its discretion." *155 N. High v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 426 (1995). In a similar vein, an appellate court reviews "a trial court's disqualification of counsel for an abuse of discretion." *Puritas Metal Prods. v. Cole*, 9th Dist. No. 07CA009255, 2008-Ohio-4653, ¶ 25, citing *Avon Lake Mun. Utils. Dept. v. Pfizenmayer*, 9th Dist. No. 07CA009174, 2008-Ohio-344, ¶ 13.

{¶ 18} Appellants initially contend the trial court erred in "sua sponte" disqualifying attorney Connors from representing WCUOA. According to appellants, the trial court acted on a "whim" and disqualified attorney Connors "for no apparent reason."

{¶ 19} The record on appeal does not support appellants' claim that the trial court "sua sponte" disqualified attorney Connors. This court has previously noted that the term "sua sponte" is defined to mean " '[w]ithout prompting or suggestion; on its own motion.' " *Cooke v United Dairy Farmers, Inc.,* 10th Dist. No. 05AP-1307, 2006-Ohio-4365, ¶ 28, quoting *Black's Law Dictionary* (7th Ed.1999) 437.

{¶ 20} In its October 26, 2015 entry, the trial court set forth the procedural background leading to its decision to disqualify attorney Connors from representing the interests of WCUOA, including: (1) attorney Connors' filing of his notice of appearance on behalf of WCUOA on July 9, 2015, (2) receiver Froehlich's motion to strike attorney Connors' appearance on behalf of WCUOA, (3) the August 31, 2015 stipulation entered into by receiver Froehlich and attorney Connors, and receiver Froehlich's withdrawal of his motion to strike attorney Connors' appearance, (4) the response of appellees, filed on

September 8, 2015, to receiver Froehlich's stipulation and withdrawal of the motion to strike, in which appellees requested the trial court strike or deny the stipulation with respect to attorney Connors' representation of WCUOA, (5) the subsequent motion filed by attorney Connors on behalf of Olander and WCUOA to strike appellees' response, and (6) receiver Froehlich's October 8, 2015 notice of withdrawal of stipulation regarding the appearance of attorney Connors.

{¶ 21} A review of the record, including the above filings, does not support appellants' contention that the trial court acted sua sponte, i.e., without prompting or suggestion, to disqualify attorney Connors. To the contrary, the issue as to attorney Connors' purported representation of WCUOA was the subject of the above filings, as well as the subject of discussions between the trial court and attorney Connors during the October 9, 2015 hearing addressing the motion to demolish.

{¶ 22} In its decision, the trial court construed appellees' September 8, 2015 response to stipulation (in which appellees requested that the stipulation and withdrawal of the receiver's motion to strike the appearance of attorney Connors be withdrawn, stricken or denied) as "a motion to disqualify Mr. Connors as Counsel for the WCUOA." The trial court held that disqualification was appropriate based on its determination that receiver Froehlich had the sole authority to enter into contracts on behalf of WCUOA for legal representation. In reaching that determination, the court reviewed and interpreted the language of its prior 2012 order appointing receiver Froehlich, holding in part:

> The Court finds that its orders relating to the Receiver's authority and exclusive control over the WCUOA are unambiguous. The Receiver has sole possession and control of all monies and bank accounts belonging to the WCUOA. The Receiver has exclusive control and custody of the WCUOA, and has the exclusive ability to control and operate the WCUOA. Last, and perhaps most important to the instant motion to disqualify, the Court's order unequivocally and unmistakably makes clear that the Receiver has the sole and exclusive right to enter the WCUOA into binding contractual agreements, such as contracts to retain the services of an attorney. No other person has authority to bind the WCUOA to contracts, including contracts for additional legal representation.

> The Receiver did not retain Mr. Connors to represent the WCUOA. As reflected in the Receiver's monthly reports filed with the Court, the Receivership – and by extension, the WCUOA – has and continues to have legal counsel in this matter. This legal counsel has been properly and legally retained by the receiver of the WCUOA and continues to represent the interests of WCUOA. Therefore, based on the Court's orders pertaining to the Receiver's authority over the WCUOA, the Court finds that Mr. Connors may not represent the WCUOA as a matter of law because the purported contract for legal services between Mr. Connors and the WCUOA was not entered into by the Receiver on behalf of the WCUOA. Any persons, other than the Receiver, lack authority to enter the WCUOA into a binding contract for legal services.

(Oct. 26, 2015 Decision & Entry at 3.)

{¶ 23} A review of the 2012 entry appointing receiver Froehlich indicates that the trial court's order specifically authorizes the receiver to perform various tasks, including the authority to: (1) "take possession of and receive from all" depositories and banks any money on deposit at such banks "belonging to or arising from the operation of the WCUOA and/or the receivership properties," (2) "maintain separate bank accounts * * * in the name of the WCUOA and the receivership properties, with exclusive control over the Accounts as receiver as he may deem advisable for the operation and maintenance of the WCUOA" and receivership properties, (3) "immediately take and have complete possession, control, and custody of the WCUOA and the receivership properties; to administer, manage, operate and protect the same," (4) "continue, initiate or terminate any contractual relations under service contracts relating to the receivership properties and/or the WCUOA," and (5) "manage and control the WCUOA, including the common areas which are the responsibility of the WCUOA." The trial court's 2012 order further authorized receiver Froehlich "to employ legal counsel for the receivership."

{¶ 24} In the present case, the trial court construed its earlier (2012) order appointing receiver Froehlich to hold that the receiver had the sole and exclusive authority to execute contracts on behalf of WCUOA, including contracts to employ the services of legal counsel. As noted by the trial court, receiver Froehlich did not retain the services of attorney Connors, and we find the court reasonably interpreted its own prior

order in determining that the party or parties who purported to contract with attorney Connors for legal services on behalf of WCUOA did so without authority. *See, e.g., Natl. City Bank Northwest v. Ledgard,* 6th Dist. No. L-94-352 (Sept. 22, 1995) (noting that trial court is in the best position to interpret its own order, and a reviewing court will afford deference to such interpretation). Accordingly, we reject appellants' contention that the trial court erred in sua sponte disqualifying attorney Connors from representing the interests of WCUOA.

{¶ 25} Appellants further argue the trial court erred in failing to hold an evidentiary hearing prior to disqualifying attorney Connors as counsel for WCUOA. We disagree.

{¶ 26} In *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1 (1998), the Supreme Court of Ohio held that "a court must hold an evidentiary hearing and issue findings of fact in ruling on a motion for disqualification of an individual or of an entire firm when an attorney has left a law firm that represents one party to an action and has joined a firm that represents an opposing party." *Dayton Bar Assn. v. Parisi,* 131 Ohio St.3d 345, 2012-Ohio-879, ¶ 15, citing *Kala* at syllabus. The Supreme Court, however, has "never held that a court must hold an evidentiary hearing before ruling on every motion for disqualification." *Id.*

{¶ 27} This court has previously observed that the "only instance in which the Supreme Court of Ohio has held that an evidentiary hearing is required is when 'ruling on a motion for disqualification of either an individual * * * or the entire firm * * * when an attorney has left a law firm and joined a firm representing the opposing party." *Luce v. Alcox,* 10th Dist. No. 04AP-1250, 2005-Ohio-3373, ¶ 6, quoting *Kala* at 13. In *Luce,* this court noted "[t]here is nothing in *Kala* to suggest that an evidentiary hearing is required on *all* motions to disqualify counsel." (Emphasis sic.) *Id.* Under the facts of *Luce,* which involved a potential conflict of interest (as opposed to a case involving "side-switching" such as in *Kala*), this court found no abuse of discretion by the trial court in failing to hold an evidentiary hearing on a motion to disqualify counsel.

{¶ 28} Other Ohio courts have similarly determined that "a trial court is not required to hold a hearing on every motion to disqualify counsel on the basis of a conflict of interest." *Merriner v. Goddard,* 7th Dist. No. 08-MO-2, 2009-Ohio-3253, ¶ 75. *See*

*also Shawnee Assocs., L.P. v. Shawnee Hills,* 5th Dist. No. 07CAE050022, 2008-Ohio-461, ¶ 34 (distinguishing *Kala,* and noting that "[t]his 'side-switching' scenario is the only instance in which the Supreme Court of Ohio has held an evidentiary hearing is required"); *Harsh v. Kwait,* 8th Dist. No. 76683 (Oct. 5, 2000) (no abuse of discretion by trial court in disqualifying law firm for conflict of interest without holding evidentiary hearing).

{¶ 29} In support of their argument that the trial court was required to conduct an evidentiary hearing, appellants rely on *Dickens v. J&E Custom Homes, Inc.,* 187 Ohio App.3d 627, 2010-Ohio-2634 (2d Dist.). *Dickens,* however, is distinguishable from the instant action as it involved the type of "side-switching" scenario at issue in *Kala.* Specifically, under the facts of *Dickens,* an attorney who had once been associated with a firm representing the appellee property owners left that firm and became an associate of the firm representing the appellant contractor. The court in *Dickens,* citing *Kala,* stressed the fact that, because the motion for disqualification in that case "implies a charge of unethical conduct, the challenged firm must be given an opportunity to defend not only its relationship with the client, but also its good name, reputation and ethical standards." *Dickens* at ¶ 6.

{¶ 30} In the present case, we find no error by the trial court in failing to schedule a formal hearing prior to disqualifying attorney Connors. We note the trial court addressed the issue of attorney Connors' purported representation of WCUOA during the October 9, 2015 hearing on the pending motion to demolish. During that hearing, attorney Connors stated he was making an appearance "on behalf of the defendants in this case. I represent the Association and Mr. Olander." (Oct. 9, 2015 Tr. at 10.) In response, the trial court stated: "And as we discussed in chambers – First of all, let's clarify for the record, you have entered an appearance on behalf of Mr. Olander." (Oct. 9, 2015 Tr. at 10.)

{¶ 31} The trial court then inquired of attorney Connors whether Olander had been notified of the hearing, prompting the following colloquy:

> MR. CONNORS: Mr. Olander is not present today.
>
> THE COURT: All right. And has he been informed of this hearing?

MR. CONNORS: With all due respect, I have authority from the defendants, including Mr. Olander, to be here and represent his interests in this case.

* * *

THE COURT: My issue, Mr. Connors, have you or have you not informed your clients of this hearing?

MR. CONNORS: Your Honor, with all due respect, I cannot reveal the information that I have disclosed to my client and that I've received from my client, under the attorney-client privilege.

THE COURT: It's not privileged information.  The Court is required to inquire - - You're asking for people to be present in this hearing.  I'm just asking: Is your client, Mr. Olander, one of these people?

MR. CONNORS:  He is not present in the courtroom.

THE COURT: Okay.  Was he notified of today's hearing?

MR. CONNORS: I am told that he has been notified.

THE COURT: Have you talked to him?  Yes or no.

MR. CONNORS: Yes, I have.

THE COURT:  Okay.  Did you tell him?

MR. CONNORS: I did not tell him specifically about this hearing in particular.

THE COURT:  Okay.  Has he waived his right to be present here today?

MR. CONNORS: He has authorized me to appear in his behalf.

THE COURT: Okay.  So he has given you the authority to appear in his behalf and to waive his appearance for this hearing.

MR. CONNORS:  He has hired me as his legal counsel to represent him in these proceedings as a defendant.

\* \* \*

THE COURT:  Well, all I'm asking is for yes or no.  All right. Just, come on.  Let's not start this way this morning.

MR. CONNORS:  All right.

THE COURT:  Listen to what I'm saying.  Did you inform your client of today's hearing, yes or no?

MR. CONNORS:  I have not spoken to him.

\* \* \*

THE COURT: Under what authority has he waived his appearance?  What has he given you to waive his appearance and to represent him today without him being present?

MR. CONNORS: Pursuant to our agreement for legal services being provided on his behalf in this case, I have the authority to do what I'm doing.

THE COURT:  That's not my question.  My question is: Has he specifically waived his right to be present at this hearing and specifically asked you to present his case in his absence? That's all I want to know.

MR. CONNORS: Okay.  I will represent on his behalf that he has waived his right to be here today.

\* \* \*

THE COURT: And so he communicated with you a waiver of any rights to be present at this hearing.

MR. CONNORS: He has communicated, as I have just indicated.

\* \* \*

THE COURT: Okay.  And I need to inquire, did he waive it or did somebody else waive it on his behalf?

MR. CONNORS: He gave me authority to represent his interests in this case and to do what is necessary in his best interest.

THE COURT: And to not be present today.

MR. CONNORS: To not be present today would be one of those.

(Oct. 9, 2015 Tr. at 10-14.)

{¶ 32} Also during the hearing, the trial court addressed with attorney Connors his purported representation of WCUOA, and the court made the following comments on the record with respect to that issue:

THE COURT: All right. Then we discussed the issue in chambers with regard to your purported representation of the Association. At this time, I am reserving ruling on the motion to disqualify you as counsel for the Association and will address that after the conclusion of the presentation of the evidence on behalf of your named client, Mr. Olander. So as it stands right now, I am permitting you to represent Mr. Olander until I rule on whether or not, ethically and legally, you are permitted to represent the Association.

There's pending before the Court a motion to disqualify you as counsel on behalf of the Association.

(Oct. 9, 2015 Tr. at 14-15.)

{¶ 33} Thus, during the hearing on the motion for demolition, the trial court engaged in discussions with attorney Connors regarding both his representation of Olander as well as his attempt to represent the interests of WCUOA. After inquiring of attorney Connors (as indicated in the above colloquy) whether he had notified Olander of the hearing, the court permitted attorney Connors to represent Olander in the proceedings, including the opportunity to cross-examine witnesses. Further, the trial court noted on the record that the issue of attorney Connors' "purported representation" of the WCUOA had been "discussed * * * in chambers." Noting the "pending * * * motion to disqualify [attorney Connors] as counsel on behalf of [WCUOA]," the court indicated it was reserving a ruling on the propriety of attorney Connors' representation of WCUOA. Accordingly, the record reflects the trial court afforded attorney Connors an opportunity to be heard on that issue.

{¶ 34} Even accepting appellants' contention that the trial court should have conducted a formal hearing on the motion to disqualify, appellant cannot demonstrate prejudice.  As noted above, the basis for the trial court's disqualification decision was the court's interpretation of its own 2012 order appointing receiver Froehlich, which the court interpreted as "unequivocally" granting receiver Froehlich sole authorization to enter into binding contracts on behalf of WCUOA.  Here, appellants cannot demonstrate that a further evidentiary hearing would have changed the trial court's ruling that receiver Froehlich had sole authority to hire legal counsel on behalf of WCUOA. *See Landzberg v. 10630 Berea Rd., Inc.*, 8th Dist. No. 79574 (Mar. 14, 2002) (even if trial court should have conducted more extensive hearing on motion to disqualify counsel, court's in-chambers hearing constituted a sufficient hearing and witness testimony would not have changed trial court's determination to disqualify counsel).

{¶ 35} Finally, we find unpersuasive appellants' claim that the trial court's ruling improperly denied WCUOA standing.  As noted by appellees, the trial court's decision and entry did not disqualify attorney Connors from representing Olander, nor did the court prevent any other unit owner/member of WCUOA from retaining attorney Connors; rather, as previously discussed, the trial court disqualified attorney Connors from representing the interests of WCUOA on the basis that receiver Froehlich had the sole authority to enter into contracts on behalf of WCUOA for legal representation.  We further note that no party challenged the trial court's 2012 order appointing receiver Froehlich and, as observed by the trial court, WCUOA "has and continues to have legal counsel in this matter."  Appellants' standing argument is without merit.

{¶ 36} Based on the foregoing, appellants' three assignments of error are overruled, and the judgment of the Franklin County Municipal Court, Environmental Division, is hereby affirmed.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

_____