[Cite as *Starner v. Johnson*, 2020-Ohio-4580.]

# COURT OF APPEALS
# FRANKLIN COUNTY, OHIO
# TENTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JEFFREY STARNER, | : | APPEAL NO. 19AP635 |
| | | TRIAL NO. 17 CV 004726 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| NEIL JOHNSON, | : | |
| | : | |
| 1212 CAPITAL LLC, | : | |
| and | | |
| | : | |
| LAWRENCE EVANS & CO., LLC, | | |
| | : | |
| Defendants-Appellants. | : | |


Civil Appeal From: Franklin County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 24, 2020.


*Thomas C. Loepp Law Offices Co., LPA,* and *Thomas C. Loepp,* for Plaintiff-Appellee,

*Luper Neidenthal & Logan* and *Gregory H. Melick,* for Defendants-Appellants.

**BERGERON, JUDGE.**

{¶1} In this "side-switching" case that resulted in counsel's disqualification, the appeal focuses on procedural obligations that failed to occur before the trial court. Unfortunately for the appellants, their path to reversal stumbles over a familiar obstacle—waiver. While they criticize the trial court for failing to convene an evidentiary hearing or issue findings of fact, they never requested either below, and in fact actively opposed an evidentiary hearing. We ultimately conclude that both of these arguments (which form the crux of the appeal) are waived, and affirm the judgment below.

I.

{¶2} This appeal stems from the trial court's entry granting plaintiff-appellee Jeffrey Starner's motion to disqualify defendants-appellants', Neil Johnson, 1212 Capital LLC, and Lawrence, Evans & Co., LLC, (collectively, the "defendants"), counsel. For some background, we begin with a brief overview of the underlying litigation. In 2014, Mr. Starner sold his trucking business to Merchants Holding LLC—an entity controlled by some of the defendants. Shortly after this sale, things went south, with Merchants Holding LLC divesting some of the trucking business's valuable assets and creditors swarming in, suing both Merchants Holding LLC and Mr. Starner (still on the hook personally for debts associated with his former business) for failure to satisfy outstanding debts. This prompted Mr. Starner to file suit and ultimately receive a judgment on a cognovit note against Merchants Holding LLC. When efforts to satisfy that judgment proved unavailing, Mr. Starner initiated the current litigation, in May 2017, against the defendants (and various others not involved in this appeal), alleging securities and common law fraud and breach of contract, among other things.

{¶3}    After two years of legal wranglings that we will skip over in the interests of brevity, the action stood on the precipice of trial. But roughly a month before trial (in August 2019), our story takes a turn that leads to this appeal, when Gregory H. Melick and the law firm of Luper Neidenthal & Logan ("LNL") entered an appearance as additional trial counsel for the defendants. Attorney John Alden had recently joined LNL, but the problem was that Mr. Alden (a transportation lawyer, not a litigator) had represented Mr. Starner for years in a variety of his business endeavors. Although the parties dispute whether, in August 2019, Mr. Starner was Mr. Alden's current client, they agree "without question" that Mr. Alden previously represented Mr. Starner and his companies. Mr. Starner promptly moved for disqualification of Mr. Melick and LNL (as well as co-defense counsel), alleging that he retained a current relationship with Mr. Alden and that Mr. Alden had access to confidential information that could be useful to defendants in the litigation.

{¶4}    To put a finer point on it, Mr. Starner specifically claimed that Mr. Alden retained confidential information regarding his businesses, including their financial situation, and in fact advised Mr. Starner in connection with the sale of his companies—i.e., the sale that triggered the previous suit and current litigation—prior to referring him to another attorney. To substantiate his motion, Mr. Starner fastened an affidavit delineating Mr. Alden's representation of him, his family, and his businesses "for nearly 45 years" and asserting that he never consented to LNL's representation (conspicuously absent from the affidavit was any allegation that Mr. Alden *currently* represented Mr. Starner, but that omission ultimately need not detain us). In conjunction with the affidavit, Mr. Starner explicitly sought an evidentiary hearing to enable him to prove to the court the extensive relationship between himself and Mr. Alden as well as how prejudicial the side-switching would be.

3

{¶5} The defendants, not surprisingly, had a different view of things, opposing the disqualification motion and insisting that LNL and Mr. Melick received no confidential information from Mr. Alden regarding this case (while also denying that Mr. Starner was a client of LNL). But they never tendered an affidavit from Mr. Alden and thus neglected to dispute (with any evidence, at least) that he possessed confidential information concerning Mr. Starner that was implicated by the present litigation. Although with at least some factual disputes swirling, one might expect LNL to clamor for an evidentiary hearing to vindicate itself, in defendants' opposition to the disqualification motion, they specifically opposed the request for an evidentiary hearing.

{¶6} As the trial date drew ever nearer, the court convened a status conference that morphed into a hearing on the disqualification motion (albeit not an evidentiary hearing). The parties debated the various points raised by the motion, but no one at the hearing requested that any witness testify or otherwise requested a formal evidentiary hearing (Mr. Melick argued orally but was not sworn as a witness). At the conclusion of the hearing, after considering these arguments, the trial court agreed with Mr. Starner, issuing an oral ruling disqualifying Mr. Melick and LNL as counsel for the defendants (while denying the broader request to disqualify LNL's co-counsel). The next day, the court memorialized its oral proclamation from the bench, granting (in part) Mr. Starner's motion to disqualify pursuant to Prof.Cond.R. 1.9. The defendants now appeal certain alleged procedural flaws embodied in the trial court's order granting Mr. Starner's motion, raising a single assignment of error.

II.

A.

4

{¶7} In their sole assignment of error, defendants challenge not the merits of the trial court's decision, but instead the procedural journey leading to the trial court's grant of disqualification. Specifically, defendants fault the trial court in failing to (1) hold an evidentiary hearing, and (2) issue findings of fact with sufficient analysis under *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 688 N.E.2d 258 (1998). We address each of these issues in turn, reviewing for an abuse of discretion. *See Cargould v. Manning*, 10th Dist. Franklin No. 09AP-194, 2009-Ohio-5853, ¶ 6 ("When a trial court orders disqualification of counsel, we review that decision under an abuse-of-discretion standard."). But first, to give context, we step back and set the stage a bit regarding the legal standard for disqualification in side-switching cases.

{¶8} In *Kala*, the Ohio Supreme Court considered whether disqualification automatically follows when an attorney (who represented a party) leaves his or her former employment with a firm and joins a law firm representing the opposing party in litigation against his or her (now former) client, or alternatively, whether that law firm may overcome a presumption of shared confidences through the institution of effective screening mechanisms. *See Kala* at 3. In electing the latter path, the court appreciated the countervailing public-policy interests of preserving a client's confidences, on the one hand, and, on the other hand, the modern realities of protecting a client's right to choose his or her counsel (assuming effective countermeasures to avoid dissemination of that confidential information). *Id.* at 5-6. Consequently, in an attempt to balance these interests, the court fashioned a three-part test to evaluate the disqualification of an individual or entire firm when an attorney leaves a law firm and subsequently joins a firm representing the opposing party. The *Kala* test considers: 1) "whether a substantial relationship exists between

5

prior and present representations"; 2) if a substantial relationship is found, whether the individual attorney can rebut the presumption that the "attorney shared in confidences and representation of the prior matter," and 3) if this presumption cannot be rebutted and the individual attorney is disqualified, whether an "effective screen has been created" to rebut the presumption of shared confidences between the "quarantined attorney" and the new firm. *Id.* at 8-10.

{¶9} In addition to this legal standard, the court erected procedural safeguards in order to allow the challenged firm "an opportunity to defend not only its relationship with the client, but also its good name, reputation and ethical standards" against the allegation of unethical conduct implicit in a motion for disqualification. *Id.* at 12. Specifically, the Supreme Court explained, "the [trial] court should hold an evidentiary hearing on a motion to disqualify and must issue findings of fact if requested based on the evidence presented." *Id.* These procedural protections do not necessarily apply to all disqualification efforts, as we have previously recognized: "[t]here is nothing in *Kala* to suggest an evidentiary hearing is required on *all* motions to disqualify counsel." *Luce v. Alcox*, 10th Dist. Franklin No. 04AP-1250, 2005-Ohio-3373, ¶ 6; *see Dayton Bar Assn. v. Parisi*, 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268, ¶ 15 ("But we have never held that a court must hold an evidentiary hearing before ruling on every motion for disqualification."); *Shawnee Assoc., L.P. v. Shawnee Hills*, 5th Dist. Delaware No. 07CAE050022, 2008-Ohio-461, ¶ 34 ("This 'side-switching' scenario is the only instance in which the Supreme Court of Ohio has held an evidentiary hearing is required.").

{¶10} Nearly a decade later, the Ohio Supreme Court adopted the Ohio Rules of Professional Conduct, which featured a slightly different standard governing conflicts of interest regarding former clients. *See* Prof.Cond.R. 1.9 and 1.10;

*Disciplinary Counsel v. Blair*, 128 Ohio St.3d 384, 2011-Ohio-767, 944 N.E.2d 1161, ¶ 1, fn. 1 (explaining the Rules of Professional Conduct went into effect in February 2007, and superseded the Code of Professional Responsibility). Although generally consistent with the holding in *Kala*, the specific standards in Prof.Cond.R. 1.10 nevertheless superseded those announced in *Kala*, which include various elaborations and refinements. *See NexGen Energy Partners, LLC, v. Reflecting Blue Tech., Inc.*, 11th Dist. Ashtabula No. 2016-A-0050, 2017-Ohio-5855, ¶ 28 ("We note *Kala* has been superseded by the Ohio Rules of Professional Conduct."); *Dickens v. J & E Custom Homes, Inc.*, 187 Ohio App.3d 627, 2010-Ohio-2634, 933 N.E.2d 291, ¶ 4 (2d Dist.) ("The Official Comment to Prof.Cond.R. 1.10(c) indicates that it is consistent with the holding in *Kala* * * * concerning disqualification of a law firm when one of its members is personally disqualified because of a former representation. The specific standards for disqualification in Prof.Cond.R. 1.10 nevertheless supersede those announced in *Kala*, which are slightly different."). Under Prof.Cond.R. 1.9, "[u]nless the former client gives *informed consent, confirmed in writing,* a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client." (Emphasis in original). When a lawyer joins a new firm, if that lawyer had "substantial responsibility" for a former client's matter, the new firm shall not knowingly "represent, in the same matter, a person whose interests are materially adverse to the interests of the former client." Prof.Cond.R. 1.10(c). But if the lawyer did not play a substantial role, the new firm will not suffer disqualification in matters in which the new lawyer is disqualified under Prof.Cond.R. 1.9 if both of the following apply: "(1) the new *firm* timely *screens* the personally disqualified lawyer from any participation in the matter and that lawyer is

apportioned no part of the fee from that matter; [and] (2) *written* notice is given as soon as practicable to any affected former client." (Emphasis in original). Prof.Cond.R. 1.10(d).

{¶11} Notwithstanding the rule-based codification, modification, and elaboration of *Kala* (as the Official Comment to the rules attests), Ohio courts still seem to deem the procedural requirements set forth in *Kala* alive and well. *See Dickens* at ¶ 10 (reasoning the "Supreme Court did not reject or abandon" the procedural aspects of *Kala* "when it adopted Prof.Cond.R. 1.10."); *City of Whitehall, Ohio v. Olander*, 10th Dist. Franklin No. 15AP-1030, 2017-Ohio-2869, ¶ 27-29 (rejecting appellants' arguments that the trial court erred in failing to hold an evidentiary hearing prior to disqualifying attorney because this case did not involve a "side-switching" scenario, thereby suggesting that *Kala*'s evidentiary hearing requirement still exists). Given that neither side in this appeal questions the on-going vitality of *Kala*'s procedural requirements, we turn to those now.

B.

{¶12} With this backdrop in mind, we consider first defendants' argument that the court erred in failing to hold an evidentiary hearing prior to granting Mr. Starner's motion. As both parties agree, prior to joining LNL, Mr. Alden represented Mr. Starner, assisting him with his transportation law needs. We therefore consider this a "side-switching" scenario as explained in *Kala*, with Mr. Starner a former client for purposes of our analysis.

{¶13} Consistent with the requirements of *Kala*, because Mr. Alden left his prior firm and joined LNL, representing the defendants in this case, an evidentiary hearing was indeed necessary. Nevertheless, we ultimately find no error here based

8

upon defendants' opposition to an evidentiary hearing below and their failure to lodge any request for a hearing.

{¶14} As mentioned above, the defendants here explicitly opposed an evidentiary hearing before the trial court, and therefore they waived their right to raise this contradictory argument for the first time on appeal. *See Zawahiri v. Alwattar*, 10th Dist. Franklin No. 07AP-925, 2008-Ohio-3473, ¶ 11-19 (holding the appellant waived argument that the court erred in analyzing the marriage contract as a prenuptial agreement, and not as a general contract, because the appellant not only failed to raise it to the trial court, but in fact asserted a contradictory argument below); *Revilo Tyuka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181, ¶ 22 (8th Dist.) (reasoning that because the company-appellant's "arguments are explicitly contrary to the arguments [it] maintained below," it "waived this new argument and cannot assert it on appeal."). In Mr. Starner's motion to disqualify, he specifically requested "an evidentiary hearing wherein evidence can be shown of the long-standing, nearly 45-year attorney-client relationship between Plaintiff Jeffrey Starner and attorney John Alden, a partner with the law firm of [LNL]." The defendants responded with an unambiguous request that the court not only deny the motion to disqualify, but also the plea for an evidentiary hearing: "Plaintiff's Motion to Disqualify all Defense Counsel *and Request for Evidentiary Hearing* (and Motion to Continue Trial) *should be denied.*" Emphasis added. Consequently, the defendants waived this evidentiary hearing challenge and cannot now revive it on appeal. *See State ex rel. PIA Psychiatric Hosps., Inc. v. Ohio Certificate of Need Review Bd.*, 60 Ohio St.3d 11, 17, 573 N.E.2d 14 (1991), fn. 4 ("Generally, an issue need not be considered on appeal if the issue was apparent at the time of trial and was not raised before the trial court.").

{¶15} More to the point, defendants never explain on appeal what evidence they would have submitted before the trial court that might have altered the result. In other words, they muster no argument about prejudice. Mr. Melick appeared capable of arguing all of the necessary points at the hearing, and evinced no limitations by the absence of calling witnesses. And, of course, if defendants believed that Mr. Alden would be the star witness who could set the record straight, we would view such a claim with a jaundiced eye at this point since they never even submitted an affidavit from him. Recall that in *Kala*, the purpose of the evidentiary hearing rested upon the need to allow the challenged firm an opportunity to defend its relationship with the client, reputation, and ethical compliance. *See Kala,* 81 Ohio St.3d at 12, 688 N.E.2d 258 ("Because a request for disqualification implies a charge of unethical conduct, the challenged firm must be given an opportunity to defend not only its relationship with the client, but also its good name, reputation and ethical standards."). Defendants did have such an opportunity, although admittedly not in the exact manner that they now demand. But this is where it falls on counsel to object and make the request for the hearing, rather than oppose it. Consequently, based upon the defendants' own waiver, the fact that the court held a hearing on the issue of disqualification, and the absence of any apparent prejudice, we find no abuse of discretion in the trial court's failure to convene an evidentiary hearing on this record.

C.

{¶16} So that brings us to the lack of any findings of fact. Defendants contend that the trial court failed to support its disqualification decision with findings of fact and sufficient analysis reflecting the *Kala* considerations. However, this challenge fails for the same reason as their evidentiary hearing argument, with the defendants waiving this issue below.

{¶17} As noted above, *Kala* requires the trial court to "issue findings of fact *if requested* based on the evidence presented." (Emphasis added.) *Kala* at 12. We acknowledge, as emphasized by defendants, that the syllabus of *Kala* does not explicate that one must actually request findings of fact. *See id.* at syllabus ("[A] court must hold an evidentiary and issue findings of fact using a three-part analysis[.]"). But we do not see a conflict between the syllabus and the body of the opinion—the syllabus provides the rule, and the body of the opinion explains how the rule is triggered. And it is difficult to overlook the clarity of "is requested"—like most relief desired by a party, it places the onus on the party to present the request in the first instance. The Supreme Court certainly did not intimate that a party could omit such a request, lie in wait, and then pounce on this issue for a victorious appeal. And, as we discuss below, such a rule would yield deleterious consequences.

{¶18} The defendants here, of course, tendered no such request for findings, despite the opportunity to do so after the trial court's oral pronouncement and after its written memorialization of the disqualification. To that point, defendants offer no serious justification for their oversight on appeal—in other words, they faced no impediment to raising this below. The defendants cannot seek reversal now based upon their own failure to request findings. This is especially true when, as in this case, the defendants tie their assignment of error to the trial court's procedural faults, touching on the merits of the disqualification decision only on the margins. *See Johnson v. Johnson*, 10th Dist. Franklin No. 19AP-84, 2019-Ohio-5138, ¶ 10, quoting *In re Adoption of Gibson*, 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986) (reasoning that one of the primary purposes of a court issuing findings of fact under the civil rules is " 'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.' "). Defendants seem to understand that,

11

without such findings, they lack a means of illustrating an abuse of discretion, which is why the procedural aspects take center stage in their brief.

{¶19} In the face of this waiver, defendants seek to rehabilitate their claim by pointing to this court's decision in *Luce*, faulting the trial court for failing to issue findings under the *Dana* test. But we see several problems with this approach. First, *Luce* did not involve a side-switching scenario—instead, the disqualification effort arose from the attorney-as-witness rule. Second, and related, *Luce* was applying different substantive law (*Dana*, described below) rather than *Kala*, and the decision predated the implementation of the Rules of Professional Conduct. Finally, perhaps most significantly, *Luce* never held that parties can sit on their hands, neglecting to request findings of fact, and that a trial court must nevertheless issue such findings on pain of reversal. More to the point, *Luce* never discusses findings of fact at all.

{¶20} In *Luce*, this court ultimately reversed and remanded the trial court's order disqualifying counsel, grounding its decision on the court's failure to provide sufficient analysis under the *Dana* test. *See Luce*, 10th Dist. Franklin No. 04AP-1250, 2005-Ohio-3373, at ¶ 8 ("By remanding, we do not imply that disqualification is not warranted, but that to disqualify counsel, the court must fulfill the required analysis."). In doing so, we relied upon a three-part test articulated by the Sixth Circuit Court of Appeals in *Dana v. Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990). The *Dana* test requires the court, when ruling on a motion to disqualify, to determine whether "(1) a past-attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject-matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana* at 888. Therefore, because the trial court undertook no such analysis below,

12

this court was "unable to conduct a meaningful review of the trial court's decision, as we [were] unable to determine the factual and/or legal conclusions reached by the trial court, as well as what the trial court relied upon in reaching its decision." *Luce* at ¶ 8.

{¶21} As explained above, *Dana* does not supply the analytical framework for a side-switching case, and in fact, *Luce* specifically contrasted its situation with that in *Kala*. *See Luce* at ¶ 6 (noting that no evidentiary hearing was required given that the case did not involve side-switching as in *Kala*). Defendants seemingly conflate the procedural requirements fashioned in *Kala* with those discussed in *Luce*. But this court based its decision in *Luce* upon its inability to conduct sufficient review as to merits of the disqualification decision in light of the *Dana* test, rather than the need for findings of fact under *Kala* or a party's obligation to make such a request. Indeed, in *Luce*, the trial court offered "no analysis" at all, *Luce* at ¶ 8, and even in our remand, we did not instruct the trial court to prepare findings of fact. It is difficult to use *Luce* as a springboard to the findings of fact rule that defendants invite us to embrace when it never mentions the point.

{¶22} This brings us to another difference; the appellants in *Luce* explicitly challenged the merits of the trial court's disqualification decision. In addressing this challenge in *Luce*, this court tied the trial court's failure to produce a sufficient *Dana* analysis to its inability to conduct meaningful review. *See Luce*, 10th Dist. Franklin No. 04AP-1250, 2005-Ohio-3373, at ¶ 8 ("Because there is no analysis, we are unable to conduct a meaningful review of the trial court's decision[.]"). Although defendants in this case touch on the merits in their appellate brief, they limit their assignment of error to the procedural flaws (i.e., lack of an evidentiary hearing and absence of findings of fact), and they only seek a remand to enable the trial court to properly convene a hearing and issue findings of fact.

{¶23} Because defendants here never requested findings of fact, we accordingly find no error in the trial court's failure to issue findings of fact below. We must also be mindful of the often strategic nature of disqualification motions—and recognizing a rule such as defendants envision could reward manipulative behavior while inflicting unnecessary delay. *See Wynveen v. Corsaro*, 2017-Ohio-9170, 106 N.E.3d 130, ¶ 16 (8th Dist.) (" 'While motions to disqualify may be legitimate and necessary under certain circumstances, they should be viewed with extreme caution as they can be misused as techniques of harassment.' "); *Fordeley v. Fordeley*, 11th Dist. Trumbull No. 2014-T-0079, 2015-Ohio-2610, ¶ 25, quoting *Waliszewski v. Caravona Builders, Inc.*, 127 Ohio App.3d 429, 433, 713 N.E.2d 65 (9th Dist.1998) (warning that "because of the potential use of the advocate-witness rule for abuse, disqualification 'is a drastic measure which should not be imposed unless absolutely necessary.' "). Specifically, to excuse the defendants' waiver here would in effect condone a strategy by which a party might purposefully elect not to request findings of fact, knowing full well that if the trial court declined to issue them, that party would have a procedural mulligan at their disposal. That risks dragging out disqualification matters (with superfluous appeals and remands), with likely attendant delay consequences for the trial proceedings as well—all of which could be avoided if the party did just what the Supreme Court said in *Kala* and "requested" the findings. We are aware of no authority specifically excusing the failure to request findings of fact in this context, and we decline to break that ground.

{¶24} For the forgoing reasons, we overrule the defendants' sole assignment of error, and accordingly affirm the judgment of the trial court.

Judgment affirmed.

MYERS, P.J., concurs.
CROUSE, J., concurs in part and dissents in part.

14

**Crouse, J.,** concurring in part and dissenting in part.

{¶25} While I concur with the majority's holding that the trial court did not err by failing to conduct an evidentiary hearing, I must dissent from the majority's holding that the trial court did not err in failing to support its disqualification decision with findings of fact.

I.

{¶26} The majority agrees that *Kala* mandates an evidentiary hearing on so-called "side-switching" cases like this one, but then holds *Kala* does not mandate findings of fact unless they are requested by a party. However, the same sentence the majority relies on to support its holding that a trial court is only mandated to issue findings of fact "if requested" also states that "the court *should* hold an evidentiary hearing on a motion to disqualify." (Emphasis added.) *Kala*, 81 Ohio St.3d at 12, 688 N.E.2d 258. Does the use of the word "should" mean that an evidentiary hearing is only suggested but not mandatory? The majority does not believe that to be the case, and neither do I. Both the syllabus and the conclusion of *Kala* state that a court "must" hold an evidentiary hearing. Furthermore, this court in *Luce I* held that an evidentiary hearing is mandated in side-switching cases. *Luce* v. Alcox, 10th Dist. Franklin No. 04AP-1250, 2005-Ohio-3373, ¶ 6, citing *Kala* at 13 ("The only instance in which the Supreme Court of Ohio has held that an evidentiary hearing is required is when 'ruling on a motion for disqualification of either an individual * * * or the entire firm * * * when an attorney has left a law firm and joined a firm representing the opposing party.' ").

{¶27} Specifically, with regard to *why* an evidentiary hearing and findings of fact are so important, the *Kala* court explained a "request for disqualification implies a charge of unethical conduct," impacts an attorney or law firm's "relationship with

15

the client," and calls into question "its good name, reputation and ethical standards." *Kala* at 12. *Kala* recognizes that disqualification of an attorney is a "drastic measure" which should not be imposed unless "absolutely necessary." *Id.* at 6; *see Luce I* at ¶ 5. When an attorney or a law firm is disqualified from representing a client due to a conflict of interest, such disqualification necessarily questions that attorney or law firm's ethics as a matter of public record. As discussed in *Kala*, "[A]n attorney's and/or law firm's most valuable asset is their professional reputation for competence, and above all honesty and integrity." *Kala* at 12, quoting *Analytica Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1275 (7th Cir.1983) (Coffey, J., dissenting). For this reason, "a summary disqualification order, based on a scant record * * * can do irreparable harm to an attorney's or law firm's professional reputation." *Id.*

{¶28} Therefore, *Kala* held "in conclusion" that "in ruling on a motion for disqualification of either an individual (primary disqualification) or the entire firm (imputed disqualification) when an attorney has left a law firm and joined a firm representing the opposing party, a court *must* hold an evidentiary hearing *and* issue findings of fact *using a three-part analysis* * * *." (Emphasis added.) *Id.* at 13.

{¶29} In addition to the conclusion, the *Kala* syllabus states, "a court *must* hold an evidentiary hearing *and* issue findings of fact *using a three-part analysis*." (Emphasis added.) *Id.* at syllabus. Although the syllabus seems to conflict with the "if requested" language cited by the majority, at the time *Kala* was decided, it was "well-established that when a statement in a Supreme Court opinion conflicts with the rule of law established in the syllabus, the syllabus controls." *State v. Terry*, 171 Ohio App.3d 473, 2007-Ohio-1096, 871 N.E.2d 634 (12th Dist.), citing *Akers v. Serv-A-Portion, Inc.*, 31 Ohio St.3d 78, 79, 508 N.E.2d 964 (1987). *See* former Rep.Op.R. 1(B)(2).

16

**{¶30}** It is important to note that the sentence the majority relies on to justify its holding that findings of fact are only mandatory "if requested" appears in the section of the opinion titled "Additional Factors to Consider in Motions to Disqualify." This "if requested" language has clearly caused some confusion, but since it appears nowhere in the syllabus or the conclusion, it should not be viewed as the law of the case.

**{¶31}** I also note that both the Ohio Supreme Court and this court have cited *Kala* as requiring the trial court to issue findings of fact regardless of a request from a party. *See Dayton Bar Assn. v. Parisi*, 131 Ohio St.3d 345, 350, 2012-Ohio-879, 965 N.E.2d 268 ("We have held that a court *must* hold an evidentiary hearing *and* issue findings of fact in ruling on a motion for disqualification of an individual or of an entire firm when an attorney has left a law firm that represents one party to an action and has joined a firm that represents an opposing party." (Emphasis added.); *see also Green v. Toledo Hosp.*, 94 Ohio St.3d 480, 483, 764 N.E.2d 979 (2002) ("In ruling on a motion for disqualification of either an individual (primary disqualification) or the entire firm (imputed disqualification) when an attorney has left a law firm and joined a firm representing the opposing party, a court *must* hold an evidentiary hearing *and* issue findings of fact using a three-part analysis.") (Emphasis added.); *City of Whitehall, Ohio v. Olander*, 10th Dist. Franklin No. 15AP-1030, 2017-Ohio-2869, ¶ 26 ("In [*Kala*] the Supreme Court of Ohio held that 'a court *must* hold an evidentiary hearing *and* issue findings of fact in ruling on a motion for disqualification of an individual or of an entire firm when an attorney has left a law firm that represents one party to an action and has joined a firm that represents an opposing party.' ") (Emphasis added.) Nowhere in those opinions does this court or the Ohio Supreme Court quote the "if requested" language.

II.

{¶32} With regard to the evidentiary-hearing issue, I disagree with the majority's contention that the defendants waived their evidentiary-hearing challenge on appeal. Mr. Starner's motion to disqualify was titled, "Motion to Disqualify All Defense Counsel And Request for Evidentiary Hearing (And Motion to Continue Trial)." Mr. Melick's memorandum in opposition was simply titled, "Memorandum Contra Plaintiff's Motion to Disqualify All Defense Counsel and Request for Evidentiary Hearing (And Motion to Continue Trial)." In his memorandum contra, Mr. Melick never specifically opposed the request for an evidentiary hearing. Rather he opposed the motion to disqualify in general, arguing that Mr. Starner did not meet his burden to show a "substantial relationship" with a prior matter, and even if he could show a substantial relationship, Mr. Alden had been effectively "screened" from the other LNL attorneys so that no confidential information about Mr. Starner was or will be disclosed. Mr. Melick's attached affidavit attempted to support LNL's screening measures and overcome the rebuttable presumption of shared confidences by stating that he did not receive any such information. Mr. Melick's memorandum contra argued that because Mr. Starner did not meet his initial burden, the motion to disqualify must be denied. Accordingly, I would not find that Mr. Melick or LNL waived an evidentiary hearing.

{¶33} However, I do agree with the majority that the defendants actually did receive a hearing on the disqualification motion and have not shown any prejudice resulting from the court's failure to hold an "evidentiary hearing." The point of the hearing requirement is to give the challenged firm "an opportunity to defend not only its relationship with its client, but also its good name, reputation and ethical standards." *Kala*, 81 Ohio St.3d at 12, 688 N.E.2d 258. Mr. Melick and his law firm

were given this opportunity. Although the hearing was not an "evidentiary hearing," it was a hearing on the merits of the motion. The defendants never asked for a continuance or claimed they wished to present additional evidence or witness testimony. And Mr. Melick, while not under oath, was able to present his "testimony" to the court as an officer of the court. Therefore, the trial court fulfilled its hearing requirement in this case.

III.

{¶34} Nevertheless, I would sustain Appellants' assignment of error because I agree that the trial court abused its discretion in disqualifying Mr. Melick and LNL without issuing findings of fact substantiating its decision.

{¶35} Although Mr. Johnson brought LNL into the underlying litigation less than one month before the scheduled trial date, it is important to remember that attorneys from LNL had been representing Mr. Johnson and 1212 Capital LLC for years, including in several of Mr. Starner's previous lawsuits. Mr. Johnson clearly wanted his long-time attorneys involved in the underlying litigation. And just as Mr. Starner's right to protect attorney-client privileged information is important, so is Mr. Johnson's right to have counsel of his choice to represent him. As set forth in *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 440 F. Supp. 193, 195-196 (N.D.Ohio 1976), *aff'd sub nom. City of Cleveland v. Cleveland Elec. Illuminating*, 573 F.2d 1310 (6th Cir.1977):

> Issues of disqualification of counsel for conflicts arising as a result of former representation present the acutely sensitive dilemma of protecting the confidentiality of the client-attorney relationship without needlessly interfering with a litigant's freedom to proceed with legal

19

counsel of choice. An equitable balance of these competing interests is essential if the public's trust in the integrity of the Bar is to be preserved.

{¶36} Mr. Melick, as an officer of the court, represented that he received absolutely no information from Mr. Alden about his prior representation of Mr. Starner. And importantly, the trial court unequivocally believed him. At the hearing, the court stated:

> Mr. Melick * * * I take you at your word that you haven't had any contact, you've avoided discussing the matter with John Alden, but I think to protect the integrity of the trial and to avoid even an appearance of a conflict, I am going to, pursuant to Rule 1.9, have Luper Neidenthal * * * removed as counsel and will not participate – any attorney, not just you, but any attorney from the firm due to Mr. Alden's continuing work with * * * your firm. And I * * * want you to know, like, it's not – I don't think you're being honest. I absolutely believe you when you state your word. It' just the appearance of the conflict * * *.

{¶37} Thus, the only reason the court gave for disqualifying Mr. Melick and LNL was based on the appearance of impropriety and a finding that LNL violated Prof.Cond.R. 1.9.[1] While *Kala* does state that sometimes the appearance of impropriety will be impossible to overcome, it still requires a trial court to engage in the three-part analysis *and* issue findings of fact. *Kala* at 13. *See Cargould v. Manning*, 10th Dist. Franklin No. 09AP-194, 2009-Ohio-5853, ¶ 10 (finding that violation of a rule of professional conduct does not necessarily warrant disqualification

---

[1] I note that Prof.Cond.R. 1.9 is titled "Duties to Former Clients." There is a dispute in this case as to whether Mr. Starner was a current client of Mr. Alden at the time of the motion to disqualify or whether he was a former client. While the trial court did not make a specific finding on the issue, it only referred to the Rule of Professional Conduct dealing with former clients in its disqualification decision.

of a lawyer in pending litigation and "the rules simply provide a framework for the ethical practice of law.").

{¶38}   In creating the three-part analysis, the *Kala* court specifically rejected the "appearance of impropriety doctrine" and held that "the fairer rule in balancing the interests of the parties and the public is to allow the presumption of shared confidences with members of the new firm to be rebutted." *Kala* at 10.   Therefore, in a side-switching situation like the one in this case, even if there was a substantial relationship between prior and present representation (which we are unsure if the trial court found), the presumption of shared confidences becomes rebuttable.   It appears that the trial court here failed to understand that it had to engage in an analysis of whether the presumption was rebutted when it stopped its analysis at the appearance of impropriety.

{¶39}   Because the trial court did not issue findings of fact, or demonstrate that it engaged in the three-part analysis, it is impossible for this court to review whether disqualification was warranted and whether the appearance of impropriety was impossible to overcome.

{¶40}   The majority's analysis seems to rise and fall with whether the Appellants requested findings of fact.   However, the assignment of error concerns not only the court's failure to issue findings of fact, but also the court's failure to engage in the three-part analysis required by *Kala*.   Certainly the majority does not claim that a trial court is not mandated to engage in the three-part *Kala* analysis *unless requested*?   The majority states, "Defendants seem to understand that, without such findings, they lack a means of illustrating an abuse of discretion, which is why the procedural aspects take center stage in their brief."   This is exactly the point.   How is this court supposed

to review the trial court's decision without findings? But the trial court is also required to engage in the appropriate analysis. It did neither.

{¶41} This is exactly why the Appellants rely on *Luce II* to support their argument that the trial court abused its discretion by not only failing to issue findings of fact, but also failing to engage in the three-part *Kala* analysis. Sure, as the majority points out, *Luce* was not a side-switching case, and therefore was not applying the law set forth in *Kala*. And *Luce* did not specifically discuss whether "findings of fact" are required since it was not analyzing the disqualification issue under the *Kala* factors. But the real point of the Appellants' citation to *Luce II*, is that because disqualification is such a drastic remedy, a trial court must set forth its reasoning so that an appellate court has the ability to review it for abuse of discretion. Without any analysis, "we are unable to conduct a meaningful review of the trial court's decision, as we are unable to determine the factual and/or legal conclusions reached by the trial court, as well as what the trial court relied upon in reaching its decision." *Luce v. Alcox*, 165 Ohio App.3d 742. 2006-Ohio-1209, 848 N.E.2d 552, ¶ 6 (10th Dist.), quoting *Luce I* at ¶ 8.

*{¶42}* I also think the majority's concern about rewarding manipulative behavior is overblown. A holding that findings of fact are mandatory in these types of side-switching cases would not "condone a strategy by which a party might purposefully elect not to request findings of fact, knowing full well that if the trial court declined to issue them, that party would have a procedural mulligan at their disposal." As I discussed above, the Ohio Supreme Court has already held in *Kala* that findings of fact and a specific three-part analysis are mandatory. The court has already explained why a "summary disqualification order" is detrimental to the disqualified attorney's/law firm's reputation and the public's confidence in the legal profession. Therefore, any court doing a proper analysis under *Kala* will know that it must issue

22

findings of fact and engage in the appropriate analysis, and that the failure to do so is subject to reversal on appeal. Ensuring that the trial court engaged in an appropriate disqualification analysis is just as much the court's own responsibility as it is the responsibility of the parties. *Kala*, 81 Ohio St.3d at 4, 688 N.E.2d 258 ("[A] court has inherent authority to supervise members of the bar appearing before it; this necessarily includes the power to disqualify counsel in specific cases. * * * [I]t is the trial court's duty to safeguard the preservation of the attorney-client relationship.").

{¶43} Accordingly, I would hold that while the trial court did not abuse its discretion in failing to conduct an "evidentiary hearing," the trial court did abuse its discretion by failing to issue findings of fact and engage in the three-part analysis set forth in *Kala*. I would reverse the trial court's judgment and remand this matter to the trial court to issue the mandatory findings of fact and to engage in the appropriate *Kala* analysis as to whether disqualification is warranted in this particular case.

{¶44} For these reasons, I respectfully dissent.

Please note:
The court has recorded its entry on the date of the release of this opinion.