MARY J. BOYLE, J.:
{¶ 1} Defendant-appellant, Joseph G. Corsaro, appeals from the trial court's order disqualifying his counsel, Attorney Steven B. Beranek, in relation to his counterclaim against plaintiff-appellee, Bradley A. Wynveen ("Bradley"). He raises one assignment of error for our review:
Did the Trial Court abuse its discretion when it disqualified Attorney Steven Beranek from continuing to represent Joseph G. Corsaro, as Trustee of the Bradley A. Wynveen Irrevocable Trust, with regard to the counterclaim filed in the action below?
{¶ 2} For the reasons that follow, we affirm.
I. Procedural History and Factual Background
A. Corsaro & Associates' Prior Representations of the Wynveen Family
{¶ 3} Corsaro is the founder and senior managing partner of Corsaro & Associates Co., L.P.A. and has been a practicing attorney, specializing in federal tax law, for over 30 years. One of Corsaro's clients was Dr. Richard A. Wynveen ("Dr. Wynveen"), who Corsaro represented in numerous matters and dealings for over 20 years. During his representations, Corsaro helped Dr. Wynveen establish the Richard A. Wynveen Revocable Trust ("RAW"), the Bradley A. Wynveen Irrevocable Trust *134 ("BAW Trust"), and the Jeffrey C. Wynveen Irrevocable Trust ("JCW Trust"), organize numerous business entities, and plan his estate.
{¶ 4} In addition to his services for Dr. Wynveen, Corsaro, as well as other members of Corsaro & Associates, offered legal assistance to Bradley, providing estate planning and representation for matters concerning property owned by Bradley and the BAW Trust. Further, attorneys from Corsaro & Associates helped organize, establish, and continue to maintain the Wynveen Family Foundation, preparing the foundation's tax returns. Bradley was designated as one of the trustees for the foundation and was expected to receive money from the foundation at some unspecified point in the future. Also, through August 2015, the firm provided legal services for Gainwell Limited Partnership, of which Bradley is part owner.
{¶ 5} On April 1, 2013, Dr. Wynveen passed away and was survived by his two sons, Bradley and Jeffrey C. Wynveen ("Jeffrey"). Two and one-half months later, Jeffrey also passed away. Prior to his passing, Dr. Wynveen appointed Corsaro as trustee of the RAW, BAW, and JCW trusts. In addition, according to the terms of Dr. Wynveen's will, Corsaro was named the executor of Dr. Wynveen's estate.
B. The Current Lawsuit and Counterclaim
{¶ 6} As part of his duties as executor of Dr. Wynveen's estate, Corsaro was responsible for paying $2,000,000 of estate tax due upon Dr. Wynveen's death. To do so, Corsaro decided to convert and collect assets owned by the estate, including debts owed by Bradley personally and as a partner in Gainwell Limited Partnership. Specifically, the debts allegedly included (1) a $100,000 loan (plus interest) from Dr. Wynveen to Bradley; (2) $338,000 in estate taxes derived from loans from Dr. Wynveen's estate to Bradley for the purchase of real property; and (3) Bradley's share of debt owed to the estate by Gainwell Limited Partnership. Bradley refused to pay those debts, however, disputing that he was responsible for them. As a result, Corsaro, the trustee of the BAW Trust, used funds from the BAW Trust to pay off the debts owed to the estate.
{¶ 7} Subsequently, on June 15, 2016, Bradley filed a complaint in the court of common pleas, probate division, against a number of defendants, including Corsaro, who was sued individually, as executor of the estate of Richard A. Wynveen, and as trustee of both the RAW and BAW trusts. The complaint also identified the Wynveen Family Foundation as a defendant.
{¶ 8} Bradley set forth six counts in his complaint, which were related to the administration of the BAW trust, RAW trust, Richard A. Wynveen's estate, and other business interests related to those trusts. Among other relief, the complaint sought the removal of Corsaro as trustee for the RAW and BAW trusts, trust and estate accountings, disgorgement of excessive attorney fees billed by Corsaro & Associates and fiduciary fees, surcharges, damages, and attorney fees.
{¶ 9} On September 14, 2016, Corsaro, in all of his capacities, filed an answer as well as a counterclaim against Bradley, seeking recovery of debts owed by Bradley to the BAW trust and Richard A. Wynveen's estate. Attorney Beranek, who works for Corsaro's law firm, Corsaro & Associates, represented Corsaro on his counterclaim and as trustee of the BAW trust. Attorney Beranek also filed a notice of appearance on behalf of the Wynveen Family Foundation; however, Attorney Beranek later filed a motion to withdraw as counsel for the foundation. Corsaro retained separate counsel to defend himself *135 against the counts alleged in Bradley's complaint.
{¶ 10} On December 2, 2016, Bradley filed a motion to disqualify Attorney Beranek based on Corsaro & Associates' prior representations of Bradley and his family members. On February 13, 2017, the probate court, without a hearing, granted Bradley's motion to disqualify Attorney Beranek. In its judgment entry granting Bradley's motion to disqualify Attorney Beranek, the probate court found that
under the three part test for determining disqualification set forth in Dana , the Plaintiff has demonstrated that (1) a past attorney-client relationship exists between Plaintiff and Corsaro & Associates, (2) a substantial relationship exists between the subject matter of past relationships and the current dispute and (3) Corsaro, through his representation of Plaintiff and Plaintiff's businesses acquired confidential information from the Plaintiff.
{¶ 11} It is from that order that Corsaro now appeals.
II. Law and Analysis
{¶ 12} In his sole assignment of error, Corsaro contends that the trial court erred in disqualifying Attorney Beranek from representing him in his counterclaim against Bradley. In support of his argument, Corsaro argues that the trial court improperly applied the three-part test for disqualification set forth in Dana Corp. v. Blue Cross & Blue Shield Mut. , 900 F.2d 882 (6th Cir.1990). He specifically argues that the counterclaim and prior representations by attorneys of Corsaro & Associates are not substantially related and that Attorney Beranek did not acquire confidential information concerning Bradley. In response, Bradley argues that the trial court's order disqualifying Attorney Beranek was not an abuse of its discretion because all three prongs of the Dana test were satisfied.
{¶ 13} At the outset, we note that disqualification of counsel in a civil case is a final appealable order. See Ross v. Ross , 94 Ohio App.3d 123, 129, 640 N.E.2d 265 (8th Dist.1994) ; Kala v. Aluminum Smelting & Refining Co., Inc. , 81 Ohio St.3d 1, 3, 688 N.E.2d 258 (1998).
{¶ 14} Turning to the merits, trial courts have the "inherent authority to supervise members of the bar appearing before it and this necessarily includes the power to disqualify counsel in specific cases[,]" such as when "an attorney cannot, or will not, comply with the Code of Professional Responsibility when representing a client." Fried v. Abraitis , 8th Dist. Cuyahoga No. 103070, 61 N.E.3d 545, 2016-Ohio-934, ¶ 11, citing Royal Indemn. Co. v. J.C. Penney Co. , 27 Ohio St.3d 31, 501 N.E.2d 617 (1986), and Mentor Lagoons, Inc. v. Rubin , 31 Ohio St.3d 256, 510 N.E.2d 379 (1987). Trial courts have a wide discretion in exercising that authority. Id. , citing Royal Indemn .
{¶ 15} Accordingly, a trial court's decision to disqualify counsel will only be reversed if it constitutes an abuse of discretion. Id. , citing Centimark Corp. v. Browning Sprinkler Serv., Inc. , 85 Ohio App.3d 485, 620 N.E.2d 134 (8th Dist.1993). An abuse of discretion occurs when the lower court's conclusion is unreasonable, arbitrary, or unconscionable. Id. "A decision is unreasonable if there is no sound reasoning process that would support the decision." Id. , citing Centimark .
{¶ 16} When deciding whether to disqualify counsel, courts should keep in mind that disqualification is "a drastic measure which should not be imposed unless absolutely necessary" and must rely upon a thorough consideration of the facts.
*136 Majestic Steel Serv. v. DiSabato , 8th Dist. Cuyahoga No. 76540, 1999 WL 961465, *2 (Oct. 21, 1999), citing Spivey v. Bender , 77 Ohio App.3d 17, 601 N.E.2d 56 (6th Dist.1991). " 'While motions to disqualify may be legitimate and necessary under certain circumstances, they should be viewed with extreme caution for they can be misused as techniques of harassment.' " Lytle v. Matthew , 8th Dist. Cuyahoga No. 104622, 2017-Ohio-1447, ¶ 13, 2017 WL 1407327, quoting Cliffs Sales Co. v. Am. Steamship Co. , N.D.Ohio No. 1:07-CV-485, 2007 WL 2907323 (Oct. 4, 2007).
{¶ 17} If the attorney-client relationship "is a continuing one, adverse representation is prima facie improper[.]" Sarbey v. Natl. City Bank , 66 Ohio App.3d 18, 24, 583 N.E.2d 392 (9th Dist.1990), citing Cinema 5, Ltd. v. Cinerama, Inc. , 528 F.2d 1384 (2d Cir.1976).
{¶ 18} If, however, the attorney-client relationship is a former one, Ohio courts use the " Dana test" when considering the disqualification of counsel due to a conflict of interest. Stanley v. Bobeck , 8th Dist. Cuyahoga No. 92630, 2009-Ohio-5696, ¶ 13, 2009 WL 3490668. Disqualification is proper when "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." Dana Corp. , 900 F.2d at 889, citing Cleveland v. Cleveland Elec. Illum. Co. , 440 F.Supp. 193 (N.D.Ohio 1976). The burden of proof rests with the party moving for disqualification. Lytle at ¶ 13.
A. Past Attorney-Client Relationship
{¶ 19} The first prong of the Dana test for disqualification requires the existence of an attorney-client relationship. Corsaro argues that Bradley is only a former client of Corsaro & Associates. Bradley argues that he is both a former and current client of the firm.
{¶ 20} An attorney-client relationship can be created through either the express or implied conduct of the parties. New Destiny Treatment Ctr., Inc. v. Wheeler , 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 26. "[A]n attorney-client relationship need not be formed by an express written contract or by the full payment of a retainer. Instead, [it] may be created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation." Cuyahoga Cty. Bar Assn. v. Hardiman , 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 8.
The practice of law includes the representation of a client in court proceedings, advice to clients, and any action in a client's behalf that is connected with the law. * * * [A]n attorney-client relationship exists when an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights. An essential element as to whether an attorney-client relationship has been formed is the determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege.
(Emphasis added.) Landis v. Hunt , 80 Ohio App.3d 662, 669, 610 N.E.2d 554 (10th Dist.1992).
{¶ 21} If the attorney in the present action was not the adverse party's original attorney, but rather another attorney within the same law firm as the original *137 attorney, the original attorney's relationship may nevertheless be imputed to the current attorney. Rule 1.10 of the Ohio Rules of Professional Conduct states:
While lawyers are associated in a firm , none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
Rule 1.7 prohibits an attorney from representing a client if that representation is adverse or materially limits the representation of a current client. Rule 1.9 prohibits an attorney from representing a client if that representation is substantially related and materially adverse to the interests of a former client of the attorney's.
{¶ 22} Here, the probate court stated:
Plaintiff sets forth multiple examples, supported by attached exhibits, demonstrating that Plaintiff and/or his businesses are current and prior clients of Beranek's law firm, Corsaro & Associates. Attorney Beranek's response, while accusing Plaintiff of foolishness and linguistic deception, does not deny that Defendant Corsaro has advised Plaintiff as to his estate planning and does not adequately dispute that Corsaro & Associates continue to represent Plaintiff as the Co-Trustee and President of the Wynveen Family Foundation and as part owner in Gainwell Limited Partnership.
The probate court's observations are supported by admissions by Corsaro as to his work on Bradley's estate and the firm's continued representation of the Wynveen Family Foundation as well as evidence provided by Bradley, establishing Corsaro & Associates' current representations and/or duties related to the BAW Trust, RAW Trust, Richard A. Wynveen's estate, Wynveen Family Foundation, and Gainwell Limited Partnership. In his appellate brief, Corsaro states, "With the exception of the Foundation, all other alleged representations by Corsaro of Brad and/or a company with which he is associated involve a former client." In other words, Corsaro admits that Bradley is a former client of Corsaro & Associates.
{¶ 23} Further, we find that Corsaro's statement, which was made subsequent to the firm's motion to withdraw as counsel for the foundation, supports the probate court's finding that Corsaro & Associates still represents the Wynveen Family Foundation. Therefore, Bradley, as trustee and president of the foundation, is still a current client of Corsaro & Associates. Citing In re Berger McGill , 242 B.R. 413, 420 (Bankr.S.D.Ohio 1999), Corsaro is correct in arguing that "representation of a closely-held company 'does not inherently mean' that the attorney for the corporation also represents the individual constituents." In fact, we have recognized that proposition of law many times. See Stanley v. Bobeck , 8th Dist. Cuyahoga No. 92630, 2009-Ohio-5696, 1999 WL 1240942, ¶ 15 ; Stuffleben v. Cowden , 8th Dist. Cuyahoga No. 82537, 2003-Ohio-6334, 2003 WL 22805065, ¶ 27. Nevertheless, when a corporation's officer reasonably believes that the corporation's counsel also represents him personally, an attorney-client relationship between the officer and corporation's counsel is created. See Bobeck at ¶ 16 ("[T]here is no evidence that Stanley believed that MRFL was acting as his personal attorneys when representing Sunshine I as Stanley never conferred with MRFL on legal matters.");
*138 Abadir v. Fanous , 8th Dist. Cuyahoga No. 71871, 1997 WL 578782, *2 (Sept. 18, 1997) ("[I]n the case of a closely held corporation with two or three shareholders, a shareholder may have a reasonable belief that the attorney is representing him personally.").
{¶ 24} Memoranda from Corsaro himself describe thorough conversations that he had with Bradley and Jeffrey concerning the foundation's taxes and income information. Specifically, in a memorandum from Corsaro, dated July 10, 2012, Corsaro wrote:
The Wynveen Family Foundation was the next topic explored. [I] explained that the foundation received a favorable Determination Letter from the Internal Revenue Service and therefore is already a 501(c)3 and 501(c)9. * * * Additionally, the purpose of the Foundation was to provide Mr. Brad Wynveen and Mr. Jeff Wynveen a source of income in the future. Mr. Brad Wynveen * * * may be compensated by the Foundation for services rendered such as investment advice. Also, since Dr. Richard Wynveen is no longer capable of managing his financial affairs the current Trustees of the Wynveen Family Foundation are now Mr. Brad Wynveen and Mr. Jeff Wynveen.
Further, in a memorandum dated June 4, 2013, he wrote:
The Wynveen Family Foundation. [I] indicated that one possible strategy to solve the estate's liquidity problem is for Brad and Jeff to disclaim distributions to the Wynveen Family Foundation. Removing the value of the disclaimed asset will in turn significantly reduce the estate tax due. [I] suggested that Brad and Jeff disclaim their Vitec interests * * * into the Foundation. Brad stated that he would like to disclaim his interest in Vitec into the Foundation[.]
Despite Attorney Lindsey Smith's presence, Corsaro's ongoing advice and meetings with Bradley certainly gave Bradley reasonable cause to believe that Corsaro was representing his personal interests along with the foundation's.
{¶ 25} We cannot say, in light of the probate court's observations and supporting evidence, that its conclusion as to Dana 's first prong was unreasonable, arbitrary, or unconscionable. Therefore, we find that the probate court's determination that Bradley satisfied the first prong under the Dana test was not an abuse of its discretion.
B. Substantially Related
{¶ 26} Turning to the second prong, Corsaro argues that his firm's prior representations of Bradley are not substantially related to his counterclaim because it concerns transactions that were separate from the subject matter of the prior representations. Bradley argues that Corsaro & Associates' prior representations involved his own estate planning, rights as a beneficiary, property rights, and business interests, all of which are directly related to Corsaro's counterclaim.
{¶ 27} "[M]atters are substantially related if there is some 'commonality of issues' or a 'clear connection' between the subject matter of the former representation and that of the subsequent adverse representation." Majestic Steel , 8th Dist. Cuyahoga No. 76540, 1999 WL 961465, at *2, quoting Phillips v. Haidet , 119 Ohio App.3d 322, 695 N.E.2d 292 (3d Dist.1997) ; see also Shawnee Assocs., L.P. v. Shawnee Hills , 5th Dist. Delaware No. 07CAE050022, 2008-Ohio-461, 2008 WL 324111, ¶ 21 ("[T]o have a substantial relationship, * * * the factual contexts of the two representations must be similar or related.").
*139 {¶ 28} Ohio appellate courts have found that an attorney's former and subsequent representations of a client are substantially related when those representations involve the same types of claims, arise out of the same case, or concern the same parties. See Litigation Mgt. v. Bourgeois , 182 Ohio App.3d 742, 2009-Ohio-2266, 915 N.E.2d 342, ¶ 17 (8th Dist.) (same claims); In re Smith , 11th Dist. Ashtabula Nos. 2005-A-0048 and 2005-A-0056, 2007-Ohio-893, 2007 WL 634243, ¶ 67 (same case and parties); Majestic Steel at *3 (same types of claims); but see Bank of Am., NA v. Valentine , 5th Dist. Delaware No. 12 CAE 03 0020, 2013-Ohio-598, 2013 WL 659088, ¶ 27 (affirming the trial court's determination that the actions were not substantially related because they involved different pieces of property and were pending at different times).
{¶ 29} In Stevens v. Grandview Hosp. & Med. Ctr. , 2d Dist. Montgomery No. 14042, 1993 WL 420127 (Oct. 20, 1993), the plaintiff sued the defendant-hospital for medical malpractice. In response, the hospital moved to disqualify plaintiff's attorney, who previously worked for the hospital for over 15 years and handled medical malpractice cases filed against it. The trial court granted the motion to disqualify the plaintiff's attorney, finding that the types of claims were similar, the attorney "must have acquired confidential information regarding [the hospital] in order to defend the hospital[,]" and the attorney had "knowledge of hospital policies and procedures, and procedures of staff physician rules and regulations[.]" Id. at *6. On review, the Second District found that the trial court set forth "very sufficient reasons for disqualifying [the] attorney" and the attorney's conduct "present[ed] a very definite impression of impropriety, which can only bring the reputation of the legal profession into further disrepute in the eyes of the general public." Id. at *7 and 8.
{¶ 30} Here, similar to the attorney in Stevens , Corsaro and members of Corsaro & Associates represented and consulted with members of the Wynveen family for over 20 years. During that time, Corsaro assisted Bradley with his estate planning, established numerous trusts, acted as-and is the current-trustee for some of those trusts, is the executor of Dr. Wynveen's estate of which Bradley is a beneficiary, assisted in the creation of the Wynveen Family Foundation, and advised Bradley of matters concerning Gainwell Limited Partnership. In a number of those representations, some of which remain current, Corsaro owes Bradley a fiduciary duty. Further, as pointed out by the Ohio Supreme Court in Krischbaum v. Dillon , 58 Ohio St.3d 58, 62, 567 N.E.2d 1291 (1991) :
Seldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice, guidance, and drafting skill in the preparation of a will to dispose of his estate after death. These consultations are often among the most private to take place between an attorney and his client. The client is dealing with his innermost thoughts and feelings, which he may not wish to share with his spouse, children and other next of kin.
Because of the decisions that go into the preparation of a will are so inherently private, * * * a client is unusually dependent upon his attorney's professional advice and skill when he consults the attorney to have a will drawn.
With that in mind, it is easy to conclude that Corsaro's involvement with Bradley's estate planning revealed a great deal of private information that will certainly be at issue in the current action.
*140 {¶ 31} Further, that information is imputed to other members of Corsaro's law firm, including Attorney Beranek. "[U]nder the Code of Professional Responsibility, an attorney's knowledge is imputed to his firm." Majestic Steel , 8th Dist. Cuyahoga No. 76540, 1999 WL 961465, at *4, citing Ussury v. St. Joseph Hosp. , 43 Ohio App.3d 48, 539 N.E.2d 700 (8th Dist.1988) ; see also Cleveland Elec. , 440 F.Supp. at 209-210, citing Consol. Theatres, Inc. v. Warner Bros. Circuit Mgt. Corp. , 216 F.2d 920 (2d Cir.1954) ("In instances where courts have found disclosure of information by the client to one member of a law firm, such knowledge has traditionally been imputed to all members of his firm."). "Absent a showing that the members of the firm have not acquired any information from the disqualified attorney, that firm is likewise disqualified." Majestic Steel at *4, citing Ussury .
{¶ 32} Furthermore, Attorney Beranek was actually involved in the organization and representation of the Wynveen Family Foundation and Gainwell Limited Partnership, in which Bradley has a partnership interest. While those matters are not necessarily identical to the matter currently before this court, they concerned Bradley's assets, which are, or at the very least, will be at issue in this matter. Further, like the court found in Stevens , and in light of all of Corsaro & Associates' previous representations of Bradley and his family members, Attorney Beranek's continued representation of Corsaro impresses a strong sense of impropriety that will surely look questionable to the public at large.
{¶ 33} Therefore, we find that the trial court did not abuse its discretion in finding that the present lawsuit is substantially related to Corsaro's prior representations, which concerned Bradley's estate planning, rights as a beneficiary, and property interests. In his counterclaim against Bradley, Corsaro seeks to recover debts owed by Bradley to the BAW Trust and Dr. Wynveen's estate. The recovery of those debts is related to Bradley's assets, of which Corsaro has substantial knowledge. The makeup of Bradley's assets and rights will undoubtedly be scrutinized while adjudicating Corsaro's counterclaim because part of the debts allegedly owed involve monies now part of Bradley's assets. Therefore, we find that the trial court did not abuse its discretion in finding that Bradley satisfied the second prong of the Dana test.
C. Confidential Information
{¶ 34} Finally, as to the third prong of the Dana test requiring the disqualification of an attorney who acquired confidential information during a prior representation of the moving party, Corsaro argues that Bradley does not offer "one example of confidential information * * * allegedly communicated to Corsaro which Corsaro can use against him in the prosecution of the Counterclaim." In response, Bradley argues that the presumption of shared confidences applies and that confidential information has been shared, pointing to the instances when attorneys for Corsaro & Associates have handled his personal matters, advised him on his business interests, and organized and maintained trusts, under which he is a beneficiary.
{¶ 35} At the outset of this final prong, it is important to note that "[a] mere allegation that allowing the representation presents the possibility of a breach of confidence or the appearance of impropriety is not enough." Phillips v. Haidet , 119 Ohio App.3d 322, 327, 695 N.E.2d 292 (3d Dist.1997). In other words, "a court should not deny the opposing party its choice of counsel solely upon an allegation of a conflict." Centimark , 85 Ohio App.3d at 489, 620 N.E.2d 134.
*141 {¶ 36} But "[t]he general rule in disqualification cases has been that, upon proof of a former attorney-client relationship concerning substantially related matters, disclosure of confidences is presumed." Cleveland Elec. , 440 F.Supp. at 209, citing T.C. Theatre Corp. v. Warner Bros. Pictures, Inc. , 113 F.Supp. 265 (S.D.N.Y.1953) ; see also In re E.M.J. , 9th Dist. Medina No. 15CA0098-M, 2017-Ohio-1090, 2017 WL 1148610, ¶ 17 ("Courts are to assume that during the course of the former representation, confidences were disclosed to the attorney bearing on the subject matter of the representation."). "As a matter of law, the disclosure of confidences to one's attorney can be presumed and need not be proven by the moving party." Harsh v. Kwait , 8th Dist. Cuyahoga No. 76683, 2000 WL 1474501, *2 (Oct. 5, 2000), citing Brant v. Vitreo-Retinal Consultants, Inc. , 5th Dist. Stark No. 1999CA00283, 2000 WL 502738 (Apr. 3, 2000). Instead, "where a substantial relationship exists, * * * the burden is on the party objecting to the disqualification to rebut the presumption." Litigation Mgt. v. Bourgeois , 182 Ohio App.3d 742, 2009-Ohio-2266, 915 N.E.2d 342, ¶ 19.
"[W]here an attorney himself represented a client in matters substantially related to those embraced by a subsequent case he wishes to bring against the former client, he is irrebuttably presumed to have benefitted from confidential information relevant to the current case. In such limited situations there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client."
Cleveland Elec. at 210, quoting Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp. , 518 F.2d 751 (2d Cir.1975). "However, when the attorney in the subsequent litigation is not the original attorney, but, instead another attorney in the same law firm, the presumption of received confidences becomes rebuttable." Stanley v. Bobeck , 8th Dist. Cuyahoga No. 92630, 2009-Ohio-5696, 2009 WL 3490668, ¶ 21, citing Luce v. Alcox , 165 Ohio App.3d 742, 2006-Ohio-1209, 848 N.E.2d 552 (10th Dist.).
{¶ 37} Corsaro argues throughout his appellate and reply briefs that Bradley has failed to specify the confidential information that Corsaro acquired during his prior representations. In light of the above case law, however, we find that Corsaro's arguments are unconvincing because, based on the substantial relation between the prior representations and counterclaim, the presumption of acquired confidences applies, and it is Corsaro's burden to rebut that presumption.
{¶ 38} Further, at oral argument in this case, Corsaro interestingly argued that since Bradley is suing his attorney, Corsaro is allowed to disclose the confidential information he acquired from his prior representations of Bradley to defend himself. Corsaro is correct that while Prof.Cond.R. 1.6 states that an attorney "shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege[,]" the rule allows the revelation of information relating to the attorney's prior representation of a client when the attorney reasonably believes it is necessary "to establish a claim or defense on behalf of the [attorney] in a controversy between the [attorney] and the client[.]" We agree that because Bradley is suing his former attorney, Corsaro is free to reveal confidential information to establish his counterclaim as reasonably necessary. Nevertheless, Rule 1.6's exception has no bearing on the Dana test, which only asks whether an attorney acquired confidential information. Here, we already found that the prior relationships *142 between Corsaro and Bradley were substantially related, Corsaro's prior representations are imputed to Attorney Beranek, and therefore, a rebuttable presumption of acquired confidences applies.
{¶ 39} In Litigation Mgt. , 182 Ohio App.3d 742, 2009-Ohio-2266, 915 N.E.2d 342, we reviewed a trial court's order disqualifying the defendants' counsel. Discussing Dana 's third prong, we found that the presumption of shared confidences applied and that the disqualified attorney failed to rebut that presumption. Id. at ¶ 22, 23. Specifically, we found that the defendant's failure to "provide any evidence of a screen or 'Chinese wall' to prevent the sharing of any confidential information" was insufficient to rebut the presumption of acquired confidences. Id. As a result, we found that the trial court abused its discretion. Id.
{¶ 40} In Rosenblum v. Robbins , 9th Dist. Summit No. 15171, 1992 WL 15960 (Jan. 29, 1992), the plaintiff filed an action disputing the validity of a trust and hired an attorney, who previously handled the title for his property and prepared an escrow letter regarding that property. During that prior representation, the attorney knew that the plaintiff's property was to be placed in a trust, but he did not handle or organize the trust. In light of this information, the defendants moved to disqualify the plaintiff's attorney. The trial court granted the defendants' motion on the presumption that the plaintiff's attorney "could have obtained financial and other information concerning his former client." (Emphasis added.) Id. at *3. The Ninth District disagreed, finding that the defendants failed to "supply the trial court with any facts to establish that [the] former representation was adverse" to the plaintiff's attorney's current representation. Id. at *3. The court stated that:
[i]n fact, the evidence before the trial court demonstrates that [the attorney's] former representation of [the defendants] was merely ministerial, rather than adversary in nature. According to [the attorney's affidavit], his representation was limited to acquisition of title to the property and preparation of an escrow letter. [The attorney] did not handle any financing of the property, and he had no discussions with the [defendants] concerning the trust, its formation, or any of its terms.
Id. As a result, the Ninth District reversed the trial court's order disqualifying the plaintiff's attorney. Id.
{¶ 41} Like Litigation Mgt. , Bradley has established that the prior matters are substantially related and, therefore, that the presumption of shared confidences applies. Unlike Rosenblum, Corsaro's and Attorney Beranek's previous representations concerning Wynveen's interests were more than ministerial and allowed him to actually obtain a great deal of information related to Bradley's finances and assets. Corsaro has not sufficiently rebutted that presumption through evidence of a screen within Corsaro & Associates or other sufficient proof. In fact, Corsaro instead argues that the confidential information he acquired is irrelevant because it would not be used against Bradley in furtherance of Corsaro's counterclaim. But that is not what the third prong of the Dana test examines, and even if that information is not used to establish liability under the counterclaim, it will surely be used in execution of judgment.
{¶ 42} We find that the trial court's decision is supported by law, and we are unable to conclude that the decision was arbitrary, unreasonable, or unconscionable. Accordingly, we find that the trial court *143 did not abuse its discretion in disqualifying Attorney Beranek.
{¶ 43} Judgment affirmed.
EILEEN T. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR