[Cite as *Musser v. Youngstown Orthopaedic Assn., Ltd.*, 2021-Ohio-4301.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

DOUGLAS H. MUSSER, D.O.,

Plaintiff-Appellee,

v.

YOUNGSTOWN ORTHOPAEDIC ASSOCIATION, LTD.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0024**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 20 CV 310

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Stephen P. Griffin,* Griffin Law, LLC, 4051 Whipple Avenue Northwest, Suite 201, Canton, Ohio 44718, and *Atty. Michael J. Kahlenberg,* Kahlenberg Law, LLC, 3570 Executive Drive, Suite 216, Uniontown, Ohio 44720, for Plaintiff-Appellee and

*Atty. Richard J. Thomas* and *Atty. J. Michael Thompson,* Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A., 6 Federal Plaza Central, Suite 1300, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated: November 29, 2021

---

**D'Apolito, J.**

**{¶1}** Appellant, Youngstown Orthopaedic Associates, Ltd. ("YOA"), appeals from the February 11, 2021 judgment of the Mahoning County Court of Common Pleas disqualifying its counsel, Henderson, Covington, Messenger, Newman & Thomas Co., LPA ("the Firm"), for a conflict of interest on the motion of Appellee, Douglas H. Musser, D.O. ("Dr. Musser"). This interlocutory appeal concerns the disqualification of the Firm as counsel for YOA due to a conflict of interest with its former client, Dr. Musser. The Firm has previously acted as counsel for Dr. Musser in a civil lawsuit captioned *Blue Diamond Properties, LLC v. Douglas Musser, D.O.*, Mahoning County Common Pleas Case No. 2008 CV 03954 ("Other Case").

**{¶2}** On appeal, YOA asserts the trial court abused its discretion (1) in finding that Dr. Musser's prior representation by the Firm in the Other Case and the Present Case were substantially related; (2) in disqualifying the Firm without any evidence that it possessed any confidential information in the Other Case which would prejudice Dr. Musser in the Present Case; and (3) in applying an inapplicable appearance of impropriety standard. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶3}** Dr. Musser is a board-certified orthopaedic spine surgeon who became an employee of YOA in September 2005. YOA, a practice group of orthopedic surgeons, is a for-profit Ohio limited liability company. On May 11, 2010, Dr. Musser sent an email to Attorney Wade Doerr (a member of the Firm) relating to Dr. Musser's anticipated buy-in to YOA, in which he later became a member in September 2010. Dr. Musser asked Attorney Doerr whether he should hold off signing the buy-in documents during the pendency of the Other Case proceedings and to run the question by Attorney Richard Thomas (a member of the Firm). The Firm's time records reveal that its attorneys

conducted hours relating to the Other Case and hours reviewing the 2006 YOA Operating Agreement relating to the Present Case.[1]

{¶4}   Dr. Musser operated as YOA's sole board-certified orthopedic spine surgeon since January 2017.  From June 2017 through July 2018, Dr. Musser endured and survived significant medical issues resulting in seven surgeries.  YOA and its members have been aware of Dr. Musser's physical challenges.  Due to difficulties posed in recruiting other orthopedic spine talent, Dr. Musser sought to withdraw as a YOA member on November 1, 2019.  YOA rejected Dr. Musser's written notice of his intent to withdraw.  YOA insisted that if Dr. Musser withdraws, he will be contractually restricted by a covenant not-to-compete contained within YOA's Operating Agreement.  YOA's general counsel, Attorney Nohra, subsequently sent text messages to Dr. Musser threatening to punish him and prolong this matter as long as possible.

{¶5}   On February 10, 2020, Dr. Musser filed a complaint against YOA for declaratory judgment and breach of contract regarding the enforceability of the non-compete covenant.[2]  YOA filed an answer and counterclaim.  Dr. Musser filed a reply.

{¶6}   On July 6, 2020, Dr. Musser filed a Motion for Partial Summary Judgment or in the Alternative Preliminary Injunction.  YOA filed a motion to strike, requested an award of attorney fees, and opposed the motion for partial summary judgment.[3]

{¶7}   On August 11, 2020, Dr. Musser's counsel, Attorney Stephen Griffin with Griffin Law, LLC, notified the Firm that Dr. Musser did not waive any conflict of interest arising out of the Other Case.  The next day, Attorney Thomas with the Firm refused to withdraw predicated upon the express representation that the Other Case concerned claims surrounding a cognovit note and claimed it did not involve YOA.

{¶8}   Contrary to Attorney Thomas's claim, Dr. Musser served Attorney Thomas and the Firm with a subpoena duces tecum to review all matters pertaining to the Other

---

[1] The 2006 Operating Agreement, a later 2015 Operating Agreement, and all amendments were drafted by Attorney Jude Nohra (general counsel of YOA and a non-member of the Firm).  Attorney Doerr left the Firm in December 2011.  Attorney Thomas is a current member of the Firm.

[2] The trial court has not yet ruled on the merits of these claims and thus, they are not subject to this appeal. Dr. Musser is represented by Griffin Law, LLC.  YOA is represented by the Firm.

[3] The trial court has not yet ruled on Dr. Musser's motion for partial summary judgment.

Case. Attorney Thomas and the Firm moved to quash the subpoena.[4] However, the trial court compelled production of the documents requested on September 25, 2020. The Firm's documents in its files relating to the Other Case were produced on September 28 and 29, 2020.

**{¶9}** Dr. Musser indicated he learned via the Firm's file documents that the Other Case directly involved YOA. Dr. Musser specifically learned that the Firm's representation of him in the Other Case extended to providing him legal advice regarding Dr. Musser's buy-in to YOA and thereby making him bound under YOA's Operating Agreement. The Firm's provision of legal advice to Dr. Musser concerning the YOA Operating Agreement was further detailed in its billing records (including time spent reviewing the YOA transaction documents; time spent speaking with respect to Dr. Musser's intent to buy-in to YOA; and time spent advising Dr. Musser regarding the YOA transaction).

**{¶10}** On October 9, 2020, Dr. Musser filed a motion to disqualify the Firm as counsel for YOA in the Present Case. Dr. Musser stresses that Attorney Thomas and the Firm had "changed teams" from providing legal advice to and on behalf of Dr. Musser regarding the YOA Operating Agreement to now providing representation and legal advice on behalf of YOA against Dr. Musser to enforce the Operating Agreement. YOA opposed the motion.[5]

**{¶11}** A hearing was held on February 9, 2021. Both parties' attorneys were present. Dr. Musser's representative noted that the *Dana* test, *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882 (6th Cir.1990), and the Ohio Rules of Professional Conduct apply and that the legal arguments regarding disqualification had also been argued in briefs. (2/9/2021 Hearing T.p., p. 3, 23).

**{¶12}** Dr. Musser's counsel included 11 exhibits and went through the items with the trial court and opposing counsel, namely: (1) Exhibit 1 – email from Attorney Griffin to Attorney Thomas dated August 11, 2020 (counsel for Dr. Musser learned for the first time that Attorney Thomas had previously represented Dr. Musser and so advised that he had

---

[4] YOA stresses there was no need for a subpoena because the Firm sent counsel a complete copy of the case file on a flash drive on September 3, 2020 and that the entire file later shipped via Federal Express.

[5] Attorneys Nohra, Doerr, and Thomas filed affidavits.

learned this information, that counsel did not learn this voluntarily from opposing counsel (Attorney Thomas), Dr. Musser was not asked to waive any potential conflict, and Dr. Musser would not waive any potential conflict) (T.p., p. 4-5); (2) Exhibit 2 – email from Attorney Thomas to Attorney Griffin dated August 12, 2020 (acknowledging that the issue of a conflict had been brought up, Attorney Thomas admitted Dr. Musser is a former client of the Firm (satisfying the first prong of the *Dana* test), and Attorney Thomas indicating that the Other Case and the Present Case are unrelated (p. 5-8); (3) Exhibit 3 – Dr. Musser's notice of serving subpoena and subpoena dated August 28, 2020 (p. 8-9); (4) Exhibit 4 – transcript of proceedings regarding YOA production of original Operating Agreements, Other Case file, and billing records (p. 9-11); (5) Exhibit 5 – email from Dr. Musser to Attorney Doerr dated May 11, 2010 (affirmative evidence that Dr. Musser, in addition to whatever representation was occurring with the Other Case, provided the Firm (to whom Dr. Musser is seeking conflict disqualification) the exact documents at the point in time where Dr. Musser was about to join YOA) (p. 11-12); (6) Exhibit 6 – the Firm's billing records regarding client Dr. Musser (and how the Other Case may affect the Present Case regarding the buy-in to YOA) (p. 13-14); (7) Exhibit 7 – memorandum from Attorney Doerr to Attorney Thomas dated May 12, 2010 regarding "Contract Review for Musser's Buy-in to Youngstown Orthopaedic" (p. 16-17); (8) Exhibit 8 – correspondence from Attorney Sfara-Bruno to Attorney Thomas dated October 29, 2008 (regarding the representation of Dr. Musser, and Attorney Thomas contacting, on behalf of Dr. Musser, Attorney Nohra (counsel for YOA and the cousin of Attorney Thomas) to discuss various issues of the YOA buy-in) (p. 17-18); (9) Exhibit 9 – email from Attorney Nohra to Attorney Kahlenberg dated February 19, 2020, authenticated (Dr. Musser's attorney claiming that Attorney Nohra is and was opposing counsel and that is exactly where Attorney Thomas is now) (p. 19-20); (10) Exhibit 10 – Affidavit of Sanford Watson, Esq. (expert on the rules of professional conduct); and (11) Exhibit 11 - Curriculum Vitae of Sanford Watson, Esq. Upon an objection raised by YOA's counsel, the trial court did not consider Exhibits 10 and 11.  (p. 20-23).

{¶13}  YOA's counsel, the Firm, also argued that the *Dana* test is applicable, not *Kala*, *Kala v. Aluminum Smelting & Refining Co., Inc.,* 81 Ohio St.3d 1 (1998).  (p. 25). YOA's representative conceded that the first prong of the *Dana* test is not a contested

point. (p. 25). However, YOA's counsel argued that the second and third prongs of the *Dana* test are contested points. (p. 25-26). YOA's counsel argued at length against the assertions made by Dr. Musser's counsel and stressed that the motion to disqualify should be denied. (p. 24-44).

{¶14} YOA did not request that the trial court issue findings of fact and conclusions of law. Two days later, the court granted the motion to disqualify finding that the Firm was precluded from representing YOA due to the substantial relationship between the Present Case and its prior representation of Dr. Musser in the Other Case. Specifically, the court stated:

> The Court finds that there existed a past attorney-client relationship between movant and defense counsel dating back to 2010. The Court further finds that the subject matter of the representation involved the business relationship between Dr. Musser and Youngstown Orthopaedics, i.e., Musser's participation in the practice. The Court concludes that this matter is substantially related to the instant litigation.

> Because of the substantial nature of Dr. Musser's prior relationship with Defense counsel, the Court finds that disclosure of shared confidences must be presumed. Further the Court finds that defense counsel has failed to rebut this presumption.

> Therefore, in order to dispel any appearance of impropriety the Court disqualifies Attorney Richard Thomas and the law firm of Henderson, Covington, Messinger [sic], Newman and Thomas, L.P.A.

> Motion to Disqualify Granted. There is no just cause for delay.

> IT IS SO ORDERED.

(2/11/2021 Judgment Entry, p. 1-2).

Case No. 21 MA 0024

**{¶15}** YOA filed an interlocutory appeal and raises three assignments of error[6].

## STANDARD OF REVIEW

**{¶16}** Disqualification of counsel in a civil case is a final appealable order. *Wynveen v. Corsaro*, 8th Dist. Cuyahoga No. 105538, 2017-Ohio-9170, ¶ 13.

Disqualification of an attorney is a drastic measure that should not be imposed unless it is absolutely necessary. *Spivey v. Bender,* 77 Ohio App.3d 17, 22, 601 N.E.2d 56 (6th Dist.1991). The trial court has wide latitude when considering a motion to disqualify counsel and is reviewed for an abuse of discretion. *Id.* "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *In re S.S.L.S.,* 7th Dist. No. 12 CO 8, 2013-Ohio-3026, ¶ 22.

This court has applied a three-part test for disqualification of counsel due to a conflict of interest: "1) a past attorney-client relationship must have existed between the party seeking disqualification and the attorney he or she wishes to disqualify; 2) the subject matter of the past relationship must have been substantially related to the present case; and 3) the attorney must have acquired confidential information from the party seeking disqualification." *City of Youngstown v. Joenub, Inc.,* 7th Dist. No. 01-CA-01, 2001-Ohio-3401, ¶ 15, citing *Dana* [ *supra,* at] * * * 889[[7]].

If there is no current or past attorney-client relationship, the motion to disqualify should be denied. *Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio App.3d 255, 260, 611 N.E.2d 873 (6th Dist.1992). However if the court determines that there is or has been an attorney-client relationship, the

---

[6] YOA filed a motion for stay with the trial court on the same day of filing its notice of appeal with this court. It does not appear from the docket that the trial court ruled on that motion.

[7] *Dana* was adopted by the Supreme Court of Ohio in *Kala. Kala* has been superseded by the Ohio Rules of Professional Conduct. *See NexGen Energy Partners, LLC v. Reflecting Blue Tech., Inc.,* 11th Dist. Ashtabula No. 2016-A-0050, 2017-Ohio-5855, ¶ 28; *Starner v. Johnson*, 10th Dist. Franklin No. 19AP635, 2020-Ohio-4580, ¶ 10.

court must then determine whether a conflict of interest exists; only if a conflict exists need the attorney be disqualified. *Id.*

It is well established that disqualification of an attorney "should not be based solely upon allegation of a conflict of interest." *Kitts v. U.S. Health Corp. of S. Ohio,* 97 Ohio App.3d 271, 275, 646 N.E.2d 555 (4th Dist.1994) The moving party has the duty of showing what the connection between the cases is and must provide some evidence that a need for the disqualification exists. *Phillips v. Haidet,* 119 Ohio App.3d 322, 327, 695 N.E.2d 292 (3d Dist.1997).

*In re P.G.T.,* 7th Dist. Columbiana No. 14 CO 0034, 2016 WL 3258520, *3 (June 13, 2016).

**{¶17}** Ohio Rules of Professional Conduct, Rule 1.9(a), discusses an attorney's duties to former clients: "Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client."

**{¶18}** "'[T]he general rule in disqualification cases has been that, upon proof of a former attorney-client relationship concerning substantially related matters, disclosure of confidences is presumed.'" *Wynveen, supra,* at ¶ 36 (applying *Dana*), quoting *City of Cleveland v. Cleveland Elec. Illum. Co.*, 440 F.Supp. 193, 209 (N.D.Ohio 1976).

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED WHEN IT FOUND THAT MUSSER'S PRIOR REPRESENTATION BY THE FIRM AND THE PRESENT CASE WERE SUBSTANTIALLY RELATED.**

**{¶19}** YOA stresses the trial court "set out no relevant factual findings or reasoning" and attacks the trial court's February 11, 2021 judgment entry. (7/12/2021 Appellant's Brief, p. 25). The record reveals, however, that YOA did not request that the court issue findings of fact and conclusions of law. A primary purpose of findings of fact

and conclusions of law is "'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.'" *Ohio Edison Co. v. Cubick*, 7th Dist. Mahoning No. 20 MA 0029, 2020-Ohio-7027, ¶ 50, quoting *In re Adoption of Gibson*, 23 Ohio St.3d 170, 172 (1986).

**{¶20}** Dr. Musser claims that without written findings of fact and conclusions of law, YOA "lack[s] a means of illustrating an abuse of discretion" regarding disqualification of counsel and has waived the issue. *Starner, supra,* at ¶ 1, 18. Dr. Musser's reliance on *Starner* regarding waiver, however, is misplaced based on the facts presented in the Present Case. The holding in *Starner* is that if a party opposes an evidentiary hearing and does not request findings of fact, those issues will be fatal to an appeal based solely on the failure to hold an evidentiary hearing or issue findings of fact. *Id.* at ¶ 1. Unlike *Starner*, a hearing was held in the Present Case on February 9, 2021.

**{¶21}** As indicated by both parties at the hearing before the trial court, the three-part *Dana* test for disqualification of counsel due to a conflict of interest applies. (2/9/2021 Hearing T.p., p. 3, 25). Pursuant to the first prong of the *Dana* test, a past attorney-client relationship existed between the party seeking disqualification (Dr. Musser) and the attorney he wishes to disqualify (Attorney Thomas and the Firm). The first prong is "not a contested point in the Present Case." (7/12/2021 Appellant's Brief, p. 11; 2/9/2021 Hearing T.p., p. 25). Pursuant to the second prong of the *Dana* test, YOA's assertion that there is virtually no evidence of a substantial relationship between the Other Case and the Present Case contradicts the record.

**{¶22}** Ohio Rules of Professional Conduct, Rule 1.0(n) defines "substantially related" as:

> 'Substantially related matter' denotes one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter.

**{¶23}** We note it is an obvious conflict of interest for an attorney/law firm to represent both sides involving the same matter without a waiver. *See Bank of New York*

*v. Aponte,* 7th Dist. Mahoning No. 12 MA 125, 2013-Ohio-4360, ¶ 2. The Firm represents a group, YOA, of which Dr. Musser is a member. Therefore, the Firm cannot represent YOA against one of its own members, i.e., Dr. Musser.

**{¶24}** In addition, as stated, Dr. Musser indicated he learned via the Firm's file documents that the Other Case directly involved YOA. Dr. Musser specifically learned that the Firm's representation of him in the Other Case extended to providing him legal advice regarding Dr. Musser's buy-in to YOA and thereby making him bound under YOA's Operating Agreement. The Firm's provision of legal advice to Dr. Musser concerning the YOA Operating Agreement was further detailed in its billing records (including time spent reviewing the YOA transaction documents; time spent speaking with respect to Dr. Musser's intent to buy-in to YOA; and time spent advising Dr. Musser regarding the YOA transaction). YOA even indicates the Firm was involved in Dr. Musser's buy-in to YOA by reviewing documents and advising Dr. Musser as to how the buy-in would impact the Other Case and vice versa. (7/12/2021 Appellant's Brief, p. 18). Nevertheless, the record reveals that YOA's general counsel, Attorney Nohra, sent text messages to Dr. Musser threatening to punish him and prolong this matter as long as possible.

**{¶25}** Thus, the facts support a substantial relationship of a prior attorney-client relationship. *See In re P.G.T., supra,* at *3 (applying *Dana*). Dr. Musser never consented to the Firm representing YOA against him. *See* Prof.Cond.R. 1.9(a). The Other Case establishes that the Firm advised Dr. Musser regarding his legal rights related to joining YOA as a member. Dr. Musser paid the Firm to review the YOA Operating Agreement and advise him as to its impact. The Present Case reveals that the Firm is opposing Dr. Musser on his declaratory judgment and breach of contract action with respect to the enforceability of the YOA Operating Agreement and is also pursuing a counterclaim (arising directly out of the YOA Operating Agreement) against him. Pursuant to Prof.Cond.R. 1.9, once an attorney advises one party to a contract in a matter related thereto, that attorney cannot subsequently represent a new client in an adverse position to the former client upon the same contract. *See* Prof.Cond.R. 1.9, Comment 1 ("Under this rule, for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client.")

{¶26} In addition, YOA indicates the Firm last performed any legal services for Dr. Musser on February 11, 2013. Since that time, YOA stresses it had a new Operating Agreement in 2015 and then amended it several times, "[r]egardless of any similarities between the documents[.]" (8/31/21 Appellant's Reply Brief, p. 3). YOA claims that the subsequent amendments of its Operating Agreement eradicates the Firm's conflict of interest created by its prior representation of Dr. Musser. It does not. A restrictive covenant appears in the 2006 YOA Operating Agreement, effective at the time the Firm represented Dr. Musser concerning his YOA buy-in, as well as in its subsequent agreement and amendments. At issue, Section 6.5(b) states:

> For a period of two (2) years after the effective date of the Withdrawal of a Member, such Member shall not engage (except with the prior written consent of the Company, which may be unreasonably withheld) in any capacity whatsoever, whether as an owner, partner, investor, shareholder, director, member, manager, officer, employee, consultant, independent contractor, co-venturer, financier, employer, agent, representative or otherwise directly or indirectly, in the practice of medicine within a fifteen (15) mile radius of any practice location of the Company, including without limitation any hospital or other facility at which one or more Members practiced medicine at any time during the term of such withdrawing Member's membership and/or employment with the Company.

{¶27} Based on the facts presented, the trial court did not abuse its discretion in finding the existence of a past attorney-client relationship (first prong of the *Dana* test) and a substantial relationship between the Firm's representation of Dr. Musser in the Other Case and its representation of YOA against Dr. Musser in the Present Case (second prong of the *Dana* test).

{¶28} YOA's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED WHEN IT DISQUALIFIED THE FIRM WITHOUT ANY EVIDENCE THAT THE FIRM POSSESSED ANY**

**CONFIDENTIAL INFORMATION AS A RESULT OF ITS REPRESENTATIONS OF MUSSER IN THE BLUE DIAMOND MATTER, WHICH WOULD PREJUDICE MUSSER IN ANY WAY IN THE PRESENT CASE.**

**{¶29}** Pursuant to the third prong of the *Dana* test for disqualification of counsel due to a conflict of interest, the attorney (Attorney Thomas and the Firm) must have acquired confidential information from the party seeking disqualification (Dr. Musser). YOA stresses that Dr. Musser offered no evidence that the Firm possessed any confidential information in the Other Case to prejudice Dr. Musser in any manner in the Present Case. On the other hand, Dr. Musser claims that YOA's Operating Agreement constitutes confidential information and at a minimum, a presumption of shared confidences applies.

**{¶30}** Generally, a presumption of shared confidences examines:

(1) whether a substantial relationship exists between the matter at issue and the matter of the former firm's prior representation, (2) if that substantial relationship is found to exist, whether there is sufficient evidence that the attorney had no personal contact with or knowledge of the related matter to overcome the presumption of shared confidences within the former firm, and (3) if the attorney did have personal contact with or knowledge of the related matter, whether institutional screening mechanisms have been adopted by the new firm to prevent the flow of information from the quarantined lawyer to preserve the confidences of the former client and avoid imputed disqualification of the entire firm.

*Disciplinary Counsel v. Ward*, 143 Ohio St.3d 23, 2015-Ohio-237, ¶ 24.

**{¶31}** YOA stresses here again that this is not a "side-switching" case (subject to *Kala*) but rather an "ordinary, garden-variety conflict of interest claim" (subject to *Dana*).[8]

---

[8] "Side-switching" involves "when an attorney and his law firm terminate a relationship with an existing client and, thereafter, the attorney (or other attorneys in that law firm) seeks to represent a new client in an action that is directly adverse to the former client." *Ward* at ¶ 25.

(7/12/2021 Appellant's Brief, p. 21). As stated, both parties indicated at the hearing before the trial court that the three-part *Dana* test for disqualification of counsel due to a conflict of interest applies. (2/9/2021 Hearing T.p., p. 3, 25).

**{¶32}** A presumption of shared confidences may be applied in matters other than traditional "side-switching" cases. Applying *Dana*, a court may find a presumption of shared confidences. *See Carr v. Acacia Country Club Co.*, 8th Dist. Cuyahoga No. 91292, 2009-Ohio-628, ¶ 26 (applying *Dana,* the court found a presumption of shared confidences holding that where an attorney/law firm represented a party in matters substantially related to those in a present case, a court may presume that the attorney/law firm benefited from confidential information); *Wynveen, supra,* at ¶ 36 (applying *Dana*, the court held "'(t)he general rule in disqualification cases has been that, upon proof of a former attorney-client relationship concerning substantially related matters, disclosure of confidences is presumed.'")

**{¶33}** Based on the specific facts in this case, the trial court acted within its discretion in applying *Dana* and finding a presumption of shared confidences. On behalf of YOA, Attorney Thomas initially claimed the Other Case did not involve YOA. Again, however, Dr. Musser indicated he later learned via the Firm's file documents that the Other Case did involve YOA. Dr. Musser further indicated he specifically learned that the Firm's representation of him in the Other Case extended to providing him legal advice regarding his buy-in to YOA and thereby making him bound under YOA's Operating Agreement (a confidential document). The Firm's provision of legal advice to Dr. Musser concerning the YOA Operating Agreement was further detailed in its billing records.

**{¶34}** With the presumption of shared confidences revealed (third prong of the *Dana* test), the trial court was within its discretion in finding that the presumption was not properly rebutted by the Firm. The Firm submitted affidavits of individuals implicated by the conflict, Attorneys Nohra, Doerr, and Thomas. YOA did not call these individuals live at the February 9, 2021 hearing. Thus, they were not subject to cross-examination by Dr. Musser or further inquiry by the trial court. As such, the attorneys' affidavits in opposition to the motion to disqualify alone are insufficient to rebut the presumption of shared confidences. *See, e.g., MMR/Wallace Power & Industrial, Inc. v. Thames Associates,* 764 F.Supp. 712, 726 (D.Conn.1991).

**{¶35}** YOA's second assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED WHEN IT APPLIED AN APPEARANCE OF IMPROPRIETY STANDARD WHICH DOES NOT APPLY.**

**{¶36}** YOA stresses that because this is not a "side-switching" case (subject to *Kala*), the trial court abused its discretion in applying an "appearance of impropriety" standard.

**{¶37}** As stated, both parties indicated at the hearing before the trial court that the three-part *Dana* test for disqualification of counsel due to a conflict of interest applies. (2/9/2021 Hearing T.p., p. 3, 25). In granting Dr. Musser's motion to disqualify, the trial court indicated:

> The Court finds that there existed a past attorney-client relationship between movant and defense counsel dating back to 2010. The Court further finds that the subject matter of the representation involved the business relationship between Dr. Musser and Youngstown Orthopaedics, i.e., Musser's participation in the practice. The Court concludes that this matter is substantially related to the instant litigation.
>
> Because of the substantial nature of Dr. Musser's prior relationship with Defense counsel, the Court finds that disclosure of shared confidences must be presumed. Further the Court finds that defense counsel has failed to rebut this presumption.
>
> Therefore, in order to dispel any appearance of impropriety the Court disqualifies Attorney Richard Thomas and the law firm of Henderson, Covington, Messinger [sic], Newman and Thomas, L.P.A.

(2/11/2021 Judgment Entry, p. 1-2).

**{¶38}** The trial court had obvious concerns regarding the Firm's attempt to represent YOA in the Present Case against Dr. Musser. However, the court's one-line

reference to an "appearance of impropriety" does not mean it applied the wrong standard in reaching its decision. Rather, the facts in this case support an order of disqualification as the court applied the correct law, *Dana* and the Ohio Rules of Professional Conduct.

**{¶39}** Dr. Musser cites to *Aponte, supra,* at ¶ 11-12, for the proposition that the "appearance of impropriety" language evolves from the case law merely recognizing that to dispel an appearance of impropriety, any doubts raised should be resolved in favor of the party seeking disqualification. Dr. Musser contends, and the record before us establishes, that is all the trial court did when it applied the correct law at issue, *Dana* and the Ohio Rules of Professional Conduct. Regardless of the fact that *Aponte* is a side-switching case, this court held, which is also applicable to the case at bar, that it is an obvious conflict of interest for an attorney/law firm to represent both sides involving the same matter without a waiver. *Aponte* at ¶ 2.

**{¶40}** As addressed, the court did not abuse its discretion in finding the existence of a past attorney-client relationship (first prong of the *Dana* test) and a substantial relationship between the Firm's representation of Dr. Musser in the Other Case and its representation of YOA against Dr. Musser in the Present Case (second prong of the *Dana* test). And with the presumption of shared confidences established (third prong of the *Dana* test), the court was within its discretion in finding that the presumption was not properly rebutted by the Firm.

**{¶41}** YOA's third assignment of error is without merit.

### CONCLUSION

**{¶42}** For the foregoing reasons, YOA's assignments of error are not well-taken. The February 11, 2021 judgment of the Mahoning County Court of Common Pleas disqualifying the Firm for a conflict of interest on the motion of Dr. Musser is affirmed.

Waite, J., concurs.

Robb, J., concurs.

Case No. 21 MA 0024

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**

Case No. 21 MA 0024